Joseph John **KRAMER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19367.

United States Court of Appeals
Eighth Circuit.

April 2, 1969.

William S. Rader, Cape Girardeau, Mo., for appellant.

King Trimble, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl Riddle, U. S. Atty., St. Louis, Mo., with him on brief.

Before GIBSON, LAY and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Defendant, Joseph Kramer, was convicted in a jury trial of violating 18 U.S.C. § 2313, interstate transportation of a stolen vehicle. After a preliminary evaluation commitment, he received a three-year sentence under 18 U.S.C. § 4208(a) (2).

On appeal defendant asserts the trial court erred: (1) in failing to define the word "possession" in its charge to the jury, (2) in not instructing on all the elements of the offense charged, and (3) in failing to properly instruct that the jurors were the sole fact finders and that the Court's comments on the evidence were not binding upon the jury. We affirm the judgment of conviction.

Although the defendant did not raise the issue of the sufficiency of the evidence in stating his points on appeal, he nevertheless argues the evidence did not show him to be in the possession of the stolen automobile; and he contends that since possession was crucial to his conviction, the Court should have defined the word "possession" in its charge. The uncontradicted evidence shows that the vehicle in question, a 1967 blue Oldsmobile Illinois license HE 327, was stolen on July 10, 1967, which fact was also duly admitted by defendant's counsel.[1]

A brief resume of the evidence is necessary to an understanding and consideration of defendant's contentions. After the car was stolen the defendant was observed at least twice by his wife's grandmother driving the car in the Chicago area. The grandmother twice took down the license number and it checked with the license on the stolen vehicle. The defendant and his wife were having marital difficulties at that time. He told his wife the car belonged to a girl friend of his, which story he now admits was false and was allegedly devised to make his wife jealous. Whether his wife became jealous is not shown by the evidence but in any event she left the defendant and went to Doniphan, Missouri, to stay with Stella Kramer, who

1. Defendant's counsel in argument stated: "The car was stolen. This element of the government's case is proved beyond a reasonable doubt. We have never denied it."

though of the same name as defendant was no relative of his.

The defendant did not know for sure where his wife had gone but surmised that she might be with Stella Kramer. The defendant testified that in a desire to become reconciled with his wife, he rode in the stolen car from Chicago, Illinois to Doniphan, Missouri, on August 17, 1967, but said that the car was driven by a pool hall friend named Bill whom he had met only once or twice. He did not know Bill's last name. Defendant explained that after failing to find adequate rail or bus transportation to the Doniphan, Missouri area, he paid Bill $50 to drive him there and thought that Bill owned the stolen vehicle.

The defendant arrived at Stella Kramer's home at about 8 p. m. and had a conversation with his wife. His wife refused to go back with him and defendant, after failing in his reconciliation overtures, carried out a threat to shoot himself. After the shooting, nevertheless, he was able to jump in the car and drive it away. The authorities were called immediately and were given a description of the defendant, and the car he was driving.

After searching for several hours Trooper Kenneth Lancaster observed the car located alongside a ditch. Lancaster pulled up to within five feet of the rear of the car and testified that the defendant was the only person in the car at that time. The inside lights of the car were on and defendant had turned around to look at Lancaster's car. The defendant upon observing Lancaster immediately drove the car away at a high rate of speed while Lancaster attempted to pursue it on the dusty gravel road leading to the Doniphan lookout tower. The road came to a dead end at that point; the stolen car had breached a barricade and struck a tree. No one was in the car when Lancaster arrived.

The defendant fled from the wreckage and after "running on and off for 12 to 15 hours", according to his testimony, he was captured. He did not know then where Bill was but claimed he was in the back seat when the defendant was fleeing from the trooper. The trooper did not see any other person nor was Bill ever produced or identified. Defendant's further attempts to locate Bill were unavailing.

■ The evidence of whether the defendant had possession of the stolen vehicle was clearly sufficient for submission to the jury and for the jury to find beyond a reasonable doubt that defendant had dominion and control over the stolen vehicle in interstate travel. Evidence shows him in possession in Chicago and he admitted having possession while driving the car in Missouri after shooting himself and while fleeing from the Missouri trooper. The government in a case of this type does not have to prove who stole the car. The gist of the offense is in transporting or in causing to be transported a stolen vehicle in interstate commerce, knowing the vehicle to be stolen.

■ We have held repeatedly that possession in one state of property recently stolen in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find that the person in possession not only knew it to be stolen property, but also transported or caused it to be transported in interstate commerce. Aron v. United States, 382 F.2d 965 (8 Cir. 1967); Minor v. United States, 375 F.2d 170 (8 Cir. 1967), cert. denied 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177; Harding v. United States, 337 F.2d 254 (8 Cir. 1964), and Herman v. United States, 289 F.2d 362 (5 Cir. 1961), cert. denied 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93.

Defendant's contentions that the car must have been stolen by the mysterious and evanescent Bill, a person seen only by defendant and his wife, and that defendant was merely an unwitting passenger, border on the incredible. But in any event the evidence was received and properly submitted to the jury for resolution.

Defendant in his brief says that his "entire defense rested on the proposition that it was another who had possession of the automobile, * * *"; and again reiterates that it was prejudicial error for the Court not to define the word "possession." Clearly, before a jury may be permitted to draw the inference of illegal interstate transportation of stolen vehicles based on possession of that vehicle, possession must be proved. Allison v. United States, 348 F.2d 152 (10 Cir. 1965).

The government here, however, has readily met its burden of proof on the issue of possession. "Possession" is a common term used in every day conversation that has not acquired any artful meaning. If defendant desired a definition of the word "possession" he should have requested it under Rule 30, Fed.R.Crim.P. and submitted a proposed instruction, or at the very least should have voiced an objection for the Court's consideration. Instead, defense counsel specifically told the Court "The defense has no objection to the charge." And again after the charge was given the defense counsel agreed with the Court's statement that there had been no refused instructions and that the defendant had no objection to the charges read.[2]

Defendant asserts the Court, by instructing the jury on the inference permitted to be drawn from possession and not specifically instructing the jury that the question of defendant's possession of the stolen car was for it to decide, implied that this question was no longer open to dispute and was thus not within the jurisdiction of the jury for decision. The Court's instruction given by the Honorable John K. Regan, an experienced trial judge, when read as a whole, properly charged the jury on the legal essentials of the offense and on the proof necessary for conviction. The Court after reading the pertinent statute and the indictment, summarized defendant's contentions, instructed on the burden of proof and paraphrased the offense as follows:

"Two essential elements are required to be proved in order to establish the offense charged in the indictment:

"*First*: The act or acts of transporting or causing to be transported in interstate commerce the stolen vehicle as charged; and

"*Second*: Doing such act or acts willfully and with knowledge that the motor vehicle had been stolen."

Then after stating it was not necessary to determine who may have stolen the motor vehicle, the Court again charged, "The burden is upon the prosecution to prove beyond all reasonable doubt every essential element of the crime charged." The jury must find defendant in possession to give rise to the permissible inference and hence it is implied in the charge that the jury must make the factual determination of possession.

In passing, we note that this issue has not properly been preserved for review under Rule 30, Fed.R.Crim.P. and defendant's request of considering the issue under the plain error Rule 52(b), Fed.R. Crim.P. is unwarranted. We said in Gendron v. United States, 295 F.2d 897, 902 (8 Cir. 1961): "The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice."

The cases relied on by defendant of Barnes v. United States, 341 F.2d 189 (5 Cir. 1965) and Barfield v. United States, 229 F.2d 936 (5 Cir. 1956) are not factually in point as in those cases a real question of possession was presented and under the evidence it was questionable whether the accused ever had possession of the stolen vehicle. Where the proof of possession is overwhelming

---

2. We recognize that in certain factual situations it might be desirable to define the word "possession" in order to more precisely delineate the issues, but in a case where, as here, the evidence shows actual and admitted possession and control, the definition is not only unnecessary but could tend to complicate and confuse the issues. Guon v. United States, 285 F.2d 140 (8 Cir. 1960).

or where ordinary laymen's concepts of possession will suffice, no legal definition is necessary. Rimerman v. United States, 374 F.2d 251 (8 Cir. 1967), cert. denied 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992, see Bohn v. United States, 260 F.2d 773 (8 Cir. 1968), cert. denied 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304 and Ketchum v. United States, 259 F.2d 434 (5 Cir. 1958), cert. denied 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578.

■ Defendant's next contention that the Court failed to charge the jury on one of the essential elements of the offense, namely that the automobile transported interstate was in fact stolen is without substance for two reasons: (1) the Court did so instruct as previously set forth in this opinion, and (2) the defendant conceded and admitted that the vehicle was in fact stolen. The defendant focused on the issue of possession and candidly admitted in his brief that his only defense was lack of possession.

Again no objection was raised to the Court's charge as required under Rule 30, Fed.R.Crim.P. and thus the above contention would not be cognizable by us unless rising to the dignity of plain error under Rule 52(b), which it certainly does not. Franano v. United States, 310 F.2d 533 (8 Cir. 1962).

Defendant's last assertion of error is that the trial judge interjected himself in the testimony in such a manner as to become an advocate for the prosecution and that the judge failed to give a cautionary instruction stating the jurors were the sole fact finders and that the Court's comments on the evidence were not binding on the jury.

In the cross-examination of Pamela Kramer, the defendant's wife, the government attempted to show that on July 10, 1967 she was confined in the Illinois Masonic Hospital under the name of Baker. (The car in question was stolen from the hospital grounds.) She denied this confinement. Later when defendant was testifying, the Court inquired of him:

"What is your wife's name?"

Answer: "Pamela Diane Kramer."

Court: "Was her former name Baker?"

Answer: "No, her married name was Raleigh and her maiden name was Cook."

■ A federal judge may ask questions and has the prerogative of commenting directly on witnesses and their testimony. Woodring v. United States, 311 F.2d 417, 421 (8 Cir. 1963). It is only when a judge becomes an advocate for one party that he oversteps the bounds of propriety in directing and governing the conduct of the trial. Franano v. United States, 310 F.2d 533 (8 Cir. 1962.) A court should show no bias toward either party or even tend to become an advocate for either party. Here the Court merely asked clarifying questions which it clearly had the right to do. If anything, the questions were probably of more benefit to the defense than to the prosecution. This contention lacks substance as does the assertion that the Court did not charge that the jurors were the sole fact finders. The Court in part of its charge said: "It is your function and duty to pass upon the facts, and when you have determined what those facts are, to apply the law as the court shall give it to you to those facts."

■ The defendant's last suggestion that there should have been a cautionary instruction on the Court's comments is likewise not well taken. No objection at all was made under Rule 30, Fed.R.Crim. P. In addition, the Court did not comment on the evidence. Again we repeat that the defendant has the obligation if he desires any additional instruction to make a proper request therefor. At the very least, any objection should be stated to the trial court, in order to allow the court to pass upon the merits of the request or the claimed assertion of error all as contemplated under aforementioned Rule 30.

Judgment affirmed.