**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marcus James HARRIS, Jr., Defendant-Appellant.**

**No. 73-1297.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1973.

Decided Dec. 12, 1973.

John P. Roehrick and Allan H. Rauch, Des Moines, Iowa, on brief for defendant-appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, on brief for plaintiff-appellee.

Before GIBSON and ROSS, Circuit Judges, and SMITH, Senior District Judge.*

PER CURIAM.

This is an appeal, after a jury verdict, wherein Marcus James Harris, Jr., was found guilty of violating the provisions of 21 U.S.C. § 841(a)(1)—the knowing and intentional distribution of heroin. On appeal Harris claims that he was prejudiced by the trial court's improper interrogation of the witness Gaston, a

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

forensic chemist. Finding no merit to Harris' claim, we affirm.

The pertinent facts may be briefly stated as follows. Detective Crosby and informant Mitchell, on August 20, 1972, proceeded to 11th and University in Des Moines, Iowa. The informant Mitchell had, prior to that time, been strip searched. At about 3:00 p. m. the defendant Harris sold three capsules of a substance represented to be heroin to Crosby. Crosby gave the defendant $30.00. Harris then gave Crosby and Mitchell a ride back to Crosby's hotel room. After leaving Harris' vehicle, Mitchell and Crosby entered Crosby's room, and Crosby, in the presence of Mitchell and other detectives, field tested the substance he had purchased from Harris in order to determine whether the substance might be heroin. The test indicated a positive reaction. Crosby then took the three capsules, put them in a glassine envelope, initialed the envelope, placed it in a lock seal envelope, put the lock seal envelope in a briefcase, and locked the briefcase. The briefcase remained in the room overnight. The next day Crosby examined the lock seal envelope and determined that it had not been tampered with. Thereafter, he opened the envelope, weighed the three capsules, resealed them in another envelope, initialed the envelope, and placed it in a vault in his office. Two days later the envelope was taken from the vault by Crosby, and mailed by registered mail, return receipt requested, to the laboratory in Chicago, Illinois. On August 24, 1972, the envelope was received by a government evidence technician at the laboratory. On September 2, 1972, Gaston, the chemist, removed the envelope from the vault at the laboratory, determined that the seals were unbroken, opened the envelope, conducted an analysis, reweighed the material, resealed the envelope, and placed the material in a vault. Thereafter, chemist Clark transported the material to trial, and the envelope was reopened at trial by chemist Gaston.

■ Before reaching the merits of Harris' claim, it is important to emphasize that the foregoing facts adequately demonstrated the needed "chain of custody." As we have said before, "[t]he criteria governing admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed." United States v. Brown, 482 F.2d 1226, 1228 (8th Cir. 1973). *See also* United States v. Jones, 486 F.2d 476, 478 (8th Cir. 1973); United States v. Jackson, 482 F.2d 1264, 1266–1267 (8th Cir. 1973).

■ Specifically, Harris claims that the trial judge committed prejudicial error by asking Gaston, the chemist, "[w]hat is a lock seal?", then, after Gaston had described what a lock seal was, asking, "Has this envelope been offered into evidence at this time?" It appears that the trial court was not "satisfied that the nature of the lock seal envelope adequately appears in this record . . . ." Harris argues that the trial judge became an advocate for the Government by asking these questions. We disagree.

As Professor McCormick has said, "The judge in his discretion may examine any witness to bring out needed facts which have not been elicited by the parties." C. McCormick, McCormick on Evidence § 8 at 12 (Cleary ed. 1972). And, as we have said before:

> It is one of the chief duties of a trial judge to clarify the testimony of witnesses. His attempt to do so should not be a basis of error unless done in a biased manner.

Bryant v. United States, 462 F.2d 433, 436 (8th Cir. 1972). Stated differently,

> "A federal judge may ask questions and has the prerogative of commenting directly on witnesses and their testimony. . . . It is only when a judge becomes an advocate for one party that he oversteps the bounds of

propriety in directing and governing the conduct of the trial. . . ." Scruggs v. United States, 450 F.2d 359, 362 (8th Cir. 1971), cert. denied, 405 U. S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972), *quoting*, Kramer v. United States, 408 F.2d 837, 841 (8th Cir. 1969).

In drawing the line between improper and proper questioning by a trial judge we have often placed emphasis upon whether the trial court "merely asked clarifying questions . . . ." Kramer v. United States, *supra*, 408 F. 2d at 841. Before the trial judge asked the nature of a "lock seal," there had been testimony by government witnesses about lock seal envelopes. The trial judge, in order to determine the admissibility of the exhibits, felt the need to know the nature of the "lock seal" referred to by the government witnesses. The nature of the lock seal would also aid the jury in determining what weight should be given the testimony of the government witnesses should the exhibits be admitted. When viewed in this light, it is clear that the only thing the trial judge did was to clarify the testimony of the government witnesses. Stated simply, the trial judge has the power to *"put to the witnesses such additional questions* as seem to him desirable to elicit the truth more fully." III J. Wigmore, Wigmore on Evidence § 784 at 189 (Chadbourn ed. 1970) (emphasis in original).

As for the trial judge's question about whether the Government had offered the exhibit into evidence, we fail to see how this question prejudiced Harris in any way. The Government had theretofore attempted to introduce the exhibit, and thus it is clear that the trial judge's question did nothing more than prompt the Government to reoffer the exhibit, something which the Government obviously would have done in any event.

The judgment of conviction is affirmed.