UNITED STATES of America,
Appellee,

v.

Jo Ann KIRK, real name Jo Ann
Thomas, Appellant.

No. 73-1529.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1974.

Decided May 20, 1974.

948

James M. Martin, St. Louis, Mo., for appellant.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from a two-count indictment and jury conviction for the distribution of heroin. 21 U.S.C. § 841(a)(1). Appellant Jo Ann Kirk (Jo Ann Thomas) challenges several trial court rulings on evidentiary matters. We affirm.

The jury convicted appellant of distributing heroin on two occasions, June 26, 1972 (Count I) and on July 2, 1972 (Count II).[1] Both sales were alleged to have taken place at Jo Ann's Confectionary, a retail store owned and operated by Jo Ann Kirk in St. Louis, Missouri.

Special Agent Dennis Harker of the Drug Abuse Law Enforcement Bureau (D.A.L.E.) testified that on both occasions the same general pattern was followed. Informant Maurice Wilson was strip searched for drugs and/or currency; he was given pre-recorded currency with which to make the narcotics buy; informant Wilson and Agent Harker were dropped off near Jo Ann's Confectionary;[2] Harker and the other agent observed Wilson approach the store and make the purchase;[3] Harker and Wilson returned to the auto where Wilson turned over substances which were later field tested and mailed to Chicago, Illinois, for chemical analysis and found to contain heroin.

Informant Wilson testified that he was a paid government informant and had been addicted to heroin for twenty years; he had felony and petty theft convictions. Wilson's testimony at trial substantially corroborated that of the government agents. The evidence indicates that while Wilson could not recall dates he did recall two buys, one inside the store and one outside. Wilson contradicted the agents' testimony as to whether the screen door of the confectionary was open or closed on the day of the inside buy. Wilson stated that it was closed.

Wilson admitted that he had lied at the hearing on motion for new trial when he testified that he did not purchase narcotics from Jo Ann Kirk but that he had the drugs hidden in his shoe. He further stated that he had lied in a previous sworn statement that he only remembered one drug buy from Jo Ann Kirk. The reason for the lies, according to Wilson, was that the lives of himself and his family had been threatened by defendant's common-law husband, Eugene Kirk.

Jo Ann Kirk testified briefly in her own behalf. She relied on an alibi for her defense, i. e., that she was not in St. Louis on the dates of the alleged purchases. She offered character witnesses

---

1. This is the second trial in this case. Appellant was originally tried and convicted on both counts on April 30 through May 1, 1973. Prior to sentencing Judge Regan sustained defendant's motion for a new trial since newly discovered evidence had been obtained, i. e., informant Maurice Wilson who had not testified at the first trial was now available and willing to testify contrary to government agents' testimony in some respects. Hence the case was retried bfore Judge Meredith on July 10 and 11, 1973. Upon jury conviction Kirk was sentenced by Judge Meredith to five years' imprisonment on Count I and five years' probation on Count II. The Court II sentence was to run consecutively to Count I. In addition Kirk received a three-year special parole on Count I.

2. On one occasion Agent Hillebrand drove for Wilson and Harker, on the other occasion Agent Loehr drove the car.

3. Only Harker and informant Wilson testified as to the physical transaction on the Count I buy which took place inside Jo Ann's Confectionary (June 26, 1972).

and numerous witnesses to bolster her alibi.

Appellant does not question the sufficiency of the evidence but attacks several trial court evidentiary rulings.

The primary argument raised on appeal concerns the trial court's restriction of defense counsel on cross-examination of DALE agents Harker and Hillebrand.

Harker and Hillebrand were the pivotal prosecuting witnesses along with informant Wilson. Prior to trial, defense counsel was informed by the court that he would not be allowed to cross-examine these agents concerning their present status as government agents or their involvement in the so-called Collinsville raids. Agents Harker and Hillebrand were in fact involved in the narcotics raids at Collinsville, Illinois, in late April 1973 which resulted in their being placed on limited duty status as agents. At the time of trial in the instant case the agents were not allowed to take part in any field duties as DALE agents but were confined to office duty.[4] Subsequent to the trial of the instant case, Harker and Hillebrand were indicted by the grand jury for their activity at Collinsville.[5]

On cross-examination defense counsel hoped to impeach the credibility of Harker and Hillebrand. The trial court instructed counsel that until the agents had been convicted of a crime the inquiry into their status was prejudicial and would not be allowed. Appellant's argument in substance is that he should have been allowed on cross-examination to inquire into the limited duty status of the agents to demonstrate before the jury that these agents should not enjoy the usual aura of authority of government agents.

■ The long-standing rule in this circuit has been that the credibility of a witness may not be impeached by showing that he has been accused of, charged with, or arrested for a crime which has not culminated in a conviction.[6] United States v. Burch, 490 F.2d 1300 (CA 8 1974); United States v. Madden, 482 F.2d 850 (CA 8 1973); Rizzo v. United States, 304 F.2d 810 (CA 8 1962), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962); Homan v. United States, 279 F.2d 767 (CA 8 1960), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960); Packineau v. United States, 202 F.2d 681 (CA 8 1953); Echert v. United States, 188 F.2d 336 (CA 8 1951). We have said also that this rule does not automatically insulate a witness from inquiry into specific acts that may have led to an arrest, though there has been no conviction. *Burch, supra* at 1302; C. McCormick, McCormick On Evidence § 42 (2d Ed. 1972).

The element of control on these matters is left to the trial court. *Burch, supra* at 1303; United States v. Willis, 482 F.2d 1034 (CA 8 1973), cert. denied, 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); *McCormick, supra* § 185 at p. 440. The trial court is vested with considerable discretion. We will not overturn that discretion but for clear

---

4. Agent Harker testified (out of the presence of the jury) that limited duty status meant that while he was still an agent and retained his government status, he was not allowed to participate in any "criminal activity" pending the outcome of the grand jury investigation of the Collinsville situation.

5. The narcotics raids at Collinsville involved several government agents who entered private homes by force in search of probable illicit drugs. The agents were ultimately tried and acquitted on several misdemeanor charges. 18 U.S.C. §§ 242 and 2236. Thereafter the felony charges against all agents were dismissed with prejudice.

6. Both parties have referred on occasion to Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). It is important not to confuse the rule discussed in the instant case—that a witness may not be asked about arrests or charges to affect *his* credibility—with the rule primarily discussed in *Michelson*—that a *character* witness *may* be cross-examined as to his knowledge of an arrest (of the person whose character he is testifying about) whether or not it resulted in a conviction. *Compare Michelson, supra* at 482–483 and Mullins v. United States, 487 F.2d 581 (CA8 1973).

abuse. *Burch, supra* at 1303; *Madden* and *Willis both supra.*

Appellant argues, nevertheless, that because she presented a complete defense it was important for her to be allowed to impeach the only two credible witnesses for the government. She also cites United States v. Miles, 480 F.2d 1215 (CA 2 1973), for the proposition that the requested impeachment interrogation should have been allowed since Harker and Hillebrand "might have been motivated to testify in a manner that would ingratiate (themselves) with (their) superiors." 480 F.2d 1215, 1217.

The alleged heroin purchase which took place inside Jo Ann's Confectionary (Count I) was directly witnessed by only informant Wilson.[7] The jury returned a conviction on that purchase.[8] As to the outside purchase (Count II), Officer Loehr testified that he observed the purchase through binoculars from approximately 100 yards down the street. His testimony was entirely consistent with that of Harker and informant Wilson. Officer Loehr is a St. Louis police officer who was attached to DALE at the time of these transactions. He has no connection with the Collinsville operation. In short, the evidence against defendant even without the testimony of agents Harker and Hillebrand was more than adequate to support a conviction.

■ We are satisfied that the trial court did not abuse its discretion in re-fusing the proffered impeachment examination. Our cases have consistently warned that charges without more are not admissible impeachment evidence. The trial court was faced with a collateral matter of a highly prejudicial nature which could potentially have effect upon several pending trials. Under all the circumstances we cannot say that the court committed error.

■ The trial court also refused to allow defense counsel to impeach the credibility of Officer Loehr by asking him whether he had ever threatened Jo Ann Kirk and her family.[9] This, too, was not an abuse of discretion since the matter is collateral in nature, allegedly having taken place some eight months after the surveillance. While it might have been admissible to show bias, as appellant argues, the admission was clearly discretionary. The court's refusal in this instance did not prejudice defendant. Error, if any, was harmless beyond a reasonable doubt. United States v. Parker, 491 F.2d 517 (CA 8 1973); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Appellant next argues that the trial court erred in allowing the government chemist, Terry Gasten, to testify regarding the identification of the substances as heroin, without the proper foundation to indicate whether the machines used were scientifically accepted and operating properly.[10] Gasten's testimony led

7. Harker witnessed the inside purchase from across the street. He testified that he could see hand motions but he could not say that he actually saw any object passed.

8. In this regard appellant argues that the two counts should have been severed since the jury confused and cumulated the evidence. The court instructed the jury that they were to consider the charges separately. The case was clearly a proper one for joinder of counts. United States v. Simon, 453 F.2d 111, 113 (CA8 1971).

9. The arrest of Jo Ann Kirk took place some eight months after the surveilling activities testified to by the agents. The trial court was clearly correct in refusing to allow the requested additional cross-examination of Of-

ficer Loehr concerning the search of Jo Ann's Confectionary. That matter was clearly irrelevant to the issues of guilt and would have tended only to confuse the trial.

10. In this same vein, appellant argues that the chain of custody has not been established because the informant Wilson did not identify the items as those allegedly given to him by defendant Kirk. Such a showing was not necessary. The record clearly demonstrates that the physical exhibits being offered were in substantially the same condition as when the crimes were committed. United States v. Harris, 488 F.2d 867, at 868 (CA8 1973); United States v. Brown, 482 F.2d 1226, 1228 (CA8 1973). Moreover, chain of custody was not raised on cross-examination at trial.

to the admission of government exhibits 1–6; the heroin, its containers and the evidence envelopes.

■ Gasten was properly qualified as an expert before the jury. He testified that he had received training in the use of the specific machines used to test the substances in question and that he periodically tested the machines and had no doubt that they were working properly. Admissibility of evidence is for the trial court. Weight of evidence is for the jury. There was clearly enough evidence before the court to allow the admission of the exhibits about which the chemist, Gasten, testified.

Appellant's next contention relates to the admission of government exhibits 7 through 10, which were two typed statements signed by informant Wilson and two receipts signed by Wilson as evidence of payment for services rendered to the government in purchasing drugs from defendant Kirk. One statement and one receipt relate to each of the two counts of the indictment. Appellant argues that these exhibits contained hearsay and contained a neat condensation of the government's complete case. He cites Sanchez v. United States, 293 F.2d 260, 269 (CA 8 1961); and United States v. Parker, 491 F.2d 517 (CA 8 1973).

■ We find that these exhibits were cumulative and that no prejudice has been shown. United States v. Tompkins, 487 F.2d 146 (CA 8 1973); *Parker, supra* at 521, 523. The government witnesses were vigorously cross-examined concerning the same matters set forth in the exhibits. While *Sanchez* indicates that it may have been improper for these exhibits to go to the jury room, we are satisfied that in this case the jury fully understood the issues involved and that the government's case rested largely on the credibility of agents Harker and Loehr and on Count I with the testimony of informant Wilson. We are fully convinced that if any error occurred

in admitting these exhibits, such error was not prejudicial.

■ Kirk's next appellate point relates to the government's comment in closing argument that the defense had failed to place Eugene Kirk, appellant's common-law husband, on the stand. When the comment was made the court admonished the jury that the defendant has no burden to produce any testimony. This is not a situation akin to prosecutorial comment on the defendant's failure to testify. *Compare* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Gray, 464 F.2d 632, 637 (CA 8 1972). No prejudice is shown in this regard.

Finally we reach appellant's argument that the court erred when it instructed the jury: " * * * Putting it another way, a reasonable doubt means a substantial doubt and not the mere possibility of innocence."

The law of this circuit at the time this case was tried was that the equation of reasonable doubt to substantial doubt was not error. United States v. Culp, 472 F.2d 459 (CA 8 1973); cert. denied, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692. We have, since that time, disapproved the "substantial doubt" language. United States v. Atkins, 487 F. 2d 257 (CA 8 1973).

■ The record shows that defendant made no specific objection to the "substantial doubt" language at trial although counsel indicates that he did make such objection out of the presence of the court reporter. The record indicates only a general objection and the tendering of an alternative definition of reasonable doubt. We have held that the "substantial doubt" language does not present plain error. *Atkins, supra.* Under the circumstances of this case, where the court has followed the approved law of the circuit and has been faced with an inadequate objection, we cannot say that error was committed.

We have reviewed the entire record and have given careful consideration to

each of appellant's claimed errors. While the errors claimed are many, we are satisfied that there has been no substantial injury to the rights of the accused.

Affirmed.