**UNITED STATES of America, Appellee,**

v.

**Angel RIOS RUIZ, a/k/a Junior Rios, Defendant-Appellant.**

No. 77–1127.

United States Court of Appeals, First Circuit.

Argued Feb. 10, 1978.

Decided June 28, 1978.

Hector M. Laffitte, Hato Rey, P. R., with whom Laffitte & Dominguez, Hato Rey, P. R., was on brief, for defendant-appellant.

John C. Hoyle, Atty., Dept. of Justice, Washington, D. C., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., Drew S. Days, III, Asst. Atty. Gen., and Frank D. Allen, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The facts giving rise to this case occurred during a drug raid and mass arrest on April 9, 1975, of approximately two hundred persons at the Cuesta Vieja public housing project in Aguadilla, Puerto Rico. Two of those arrested, Maria Elena Cornier and William F. Pellegrino,[1] claimed that they were beaten by defendant-appellant, Angel Rios Ruiz, and a fellow police officer, Cesar A. Mercado Negron. Rios Ruiz and Mercado Negron were subsequently indicted in two counts for beating and assaulting Cornier and Pellegrino and depriving them of their constitutional right not to be deprived of liberty without due process of law in violation of 18 U.S.C. § 242.[2] After a jury

---

1. Cornier and Pellegrino were charged with selling marijuana, tried and found not guilty in a court of the commonwealth. They were also charged with resisting arrest, but were never tried for that offense.

2. Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death

trial, Mercado Negron was acquitted on both counts. Appellant was found not guilty as to Count I, beating and assaulting Cornier, and found guilty as to Count II, beating and assaulting Pellegrino. This appeal followed.

Appellant assigns five specific errors to the trial. As we must, we review the record in the light most favorable to the government. There is no point in reciting what happened except to note that, although the facts were hotly contested, there was sufficient evidence for the jury to find appellant guilty as to Count II. Appellant apparently concedes this because no question has been raised as to the sufficiency of the evidence.

We discuss appellant's claimed errors in the order in which they have been briefed.

1. *Allowing in Evidence the Fact That Two Defense Witnesses Had Been Suspended from the Puerto Rican Police Force for Ten Days for the Excessive Use of Force on Unrelated Occasions.*

■ Two witnesses, Police Office Juan Valentin Hernandez and Police Sergeant Manual Vargas, testified that the defendants did not beat, assault or mistreat either of the complainants. The trial judge, after lengthy conferences with the attorneys, decided to permit the fact of the suspensions into evidence. This evidence was submitted to the jury by way of a stipulation in order to avoid recalling the witness for cross-examination. Defense counsel agreed to use of the stipulation, but not to the admission of the evidence. It was also stipulated that Sergeant Vargas had been suspended for

five days on February 12, 1976, for allowing officers under his command and in his presence to use excessive force. The ten-day suspension of Officer Valentin Hernandez started on October 7, 1974; Sergeant Vargas' suspension commenced on December 9, 1975. The court instructed the jury immediately after the stipulations were read as follows:

"All right, ladies and gentlemen, as I have perhaps told you earlier these are stipulations that have saved us the time of getting these witnesses back here. And it merely takes the place of their testimony, if they were here. I have allowed these statements to be made, these stipulations in merely for the purpose of aiding you in determining what weight you should give the testimony of those witnesses.

"You are going to be required to determine how much weight you want to give to their testimony, and whether their testimony is true or whether it's influenced by some facts. This is not evidence that these defendants did anything, and you must not consider it as evidence that these defendants may have done the same thing. It's not evidence to that. It's in solely for the purpose of determining what weight to give to the testimony of those who did testify.

"Do you understand my instructions?

"(Jury responded in the affirmative.)"

Appellant argues that he was "devastatingly prejudiced" by this evidence, and that its admission violated Federal Rule of Evidence 608(b),[3] and the generally accepted

---

results shall be subject to imprisonment for any term of years or for life.
As amended April 11, 1968, Pub.L. 90–284, § 103(b), 82 Stat. 75.

COUNT ONE

That on or about the 9th day of April, 1975, in Aguadilla, Puerto Rico, in the District and Commonwealth of Puerto Rico, ANGEL RIOS RUIZ, also known as JUNIOR RIOS, and CESAR A. MERCADO NEGRON, then officers of the Police of Puerto Rico, acting under color of the laws of the Commonwealth of Puerto Rico, a territory of the United States, did willfully and unlawfully strike, beat and assault Maria Elena Cornier, then an inhabitant of the Com-

monwealth of Puerto Rico, and did, thereby, willfully deprive Maria Elena Cornier of the right secured and protected by the Constitution and Laws of the United States, namely, the right to be deprived of liberty without due process of law.

Count Two is the same as Count One except that the name William F. Pellegrino is used in place of Maria Elena Cornier.

3. *Rule 608. Evidence of Character and Conduct of Witness*

(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibil-

doctrine that a witness may not be impeached by extrinsic evidence of prior misconduct unless it has resulted in a felony conviction which is embodied in Federal Rule of Evidence 609(a).[4] The evidentiary question is whether the suspension of the police officers, for conduct strikingly similar to that for which the defendants were on trial, was relevant as to the bias of the witnesses. Weinstein pinpoints the problem as follows:

> A similar problem arises in a criminal case when evidence of prior misconduct not the subject of a conviction, and, therefore, not provable by extrinsic evidence pursuant to Rule 608, is relevant to bias. Here again, the court must exercise its discretion to balance the need for the evidence against the underlying policy restricting impeachment by this type of evidence.

3 Weinstein's Evidence § 607[03], p. 607–26. The "bias" exception to the strictures of Federal Rules of Evidence 608(b) and 609(a) has been generally recognized. In *United States v. Robinson,* 174 U.S.App.D.C. 224, 530 F.2d 1076 (1976), testimony that an alibi witness had been a joint venturer with the defendant in the buying and selling of drugs and that charges had been brought against the witness but later dropped was allowed in evidence on the question of the witness's bias. The Court cited to Wigmore and quoted Weinstein in explaining the reason:

> The dominant principle is that evidence showing the "emotional partiality" of a witness "is always significant in assessing credibility," for "the trier must be sufficiently informed of the underlying relationships, circumstances and influences operating on the witness so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction. Courts are therefore very liberal in accepting testimony relevant to a showing of bias." 3 Weinstein's Evidence, *supra. Id.* at 1079.

We emphasize what was noted in passing in *Robinson;* that there is a significant difference between introducing misconduct evidence as to the defendant and as to a witness not on trial. The general rule has been stated in *United States v. Harris,* 542 F.2d 1283, 1302 (7th Cir. 1976): "Evidence of prior misconduct which did not result in a conviction generally may not be introduced to show a witness' bad character. Such evidence may be introduced for the purpose of showing that a witness has cause to be biased." *See also United States v. Hodnett,* 537 F.2d 828 (5th Cir. 1976), in which testimony as to a defense witness's attitude toward drugs and her presence at a prior illegal drug transaction to which the defendant was not a party was allowed in evidence on the question of bias of the witness. As noted in *United States v. Maynard,* 155 U.S.App.D.C. 223, 476 F.2d 1170, 1174 (1973): "Since the range of facts from which bias may be inferred is vast, hard and fast rules permitting or excluding specific types of impeachment evidence might be unwise."

---

ity, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

4. *United States v. Cluck,* 544 F.2d 195 (5th Cir. 1976); *United States v. Kirk,* 496 F.2d 947 (8th Cir. 1974); *Hudson v. United States,* 387 F.2d 331 (5th Cir. 1967); *United States v. Ciravola,* 384 F.2d 54 (1st Cir. 1967).

Federal Rule of Evidence 609(a) provides: (a) *General Rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

The question is always a difficult one, not only because of the language of Rules 608(b) and 609(a), but because of Rule 403 [5] which allows the trial judge to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." In *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975), we pointed out: "The test of admissibility requires balancing the prejudicial potential of the evidence against its probative value, and that task is committed primarily to the trial court." This requires a balancing by the district court in each case. The record shows that the district court here took its balancing task seriously.[6] Our review of the factors tending to show bias leads us to affirm the admission of the evidence. We first note that there is no dispute that the prior misconduct actually occurred or, at least, that the witnesses were punished for it. Thus, one of the policy reasons for Rule 608(b), avoiding fact-finding detours to determine whether allegations of prior misconduct on the part of the witness are accurate, is not relevant to this case. *See* Weinstein § 608[05], 608–22. Second is the nature of the misconduct which was of the same type for which the defendant was on trial. Third, and to our minds very significant, is the fact that the witness and defendant were brother police officers and as such, part of an organization that is particularly susceptible to being charged with the offense for which defendant was indicted and tried. And finally, the manner in which the evidence was presented limited its prejudicial impact. This misconduct of the witness was not of the magnitude to warrant more than short suspensions and no inflammatory details were brought out. In the light of all of the above factors, we cannot say that the trial judge abused his discretion in admitting the evidence.

**2. *The Exclusion of Three Police Officers in Uniform from the Courtroom.***

On the fifth day of trial, the district judge asked three policemen who were in uniform to leave the courtroom. Before taking this action, he explained his reasons to counsel.

THE COURT: Gentlemen, I am a little concerned that we have three police officers in uniform in the court. It smacks a little bit of pressurizing the jury and intimidating the jury. I am disturbed about the fact, if there is to be any intimidation of the jury. Whoever is guilty is going to spend some time in jail and I am going to be very certain that that occurs. Maybe these gentlemen here are for no illegitimate purposes, they are entitled to be here. But I am not very happy to find three officers with their badges and their uniforms sitting in court during these proceedings.

He then addressed the policemen publicly:

THE COURT: I think in all fairness to this trial that we proceed without any complaint on the part of anybody. Even though your presence here may be absolutely innocent, you are welcome to continue to attend the trial providing you do so out of uniform. I am talking to you gentlemen back there. Do you understand?

We find no violation of appellant's constitutional right to a public trial. "The standard to be applied in determining whether there is a sufficient record to support a trial judge's finding that grounds exist to exclude spectators from a courtroom is whether there has been an abuse of discretion." *United States v. Eisner*, 533 F.2d 987, 994 (6th Cir. 1976). The question of excluding the public from a trial was explored fully in both *Eisner* and *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir. 1975).[7] The right to a public

---

**5.** *Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice . . .*

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

**6.** *See* pages 732–735 of Transcript.

**7.** *See* the collection of cases in *Vincent* for a more detailed analysis.

trial guaranteed by the sixth amendment is not absolute. *United States ex rel. Lloyd v. Vincent, supra*, 520 F.2d at 1273–1274. In *Eisner*, the trial court's exclusion of all spectators because of a witness's fear of testifying was held not to be an abuse of discretion. In *Vincent*, the court held that a state trial judge "did not abuse his discretion by deciding that preserving the confidentiality of the undercover agents who were working on narcotics cases outweighed the limited burden which was placed on the right to a public trial by closing the courtroom only for that period while the undercover agents were testifying." *United States ex rel. Lloyd v. Vincent, supra*, 520 F.2d at 1275. Here, the trial judge was properly concerned with the effect on the jury of three police officers in uniform. It was not an abuse of discretion to ask them to leave, at the same time making it clear that their presence out of uniform was not forbidden.

### 3. *Evidence of Police Harassment.*

■ The court allowed in evidence testimony tending to show that complainants had been harassed by policemen other than the defendants at various times prior to the date of their arrest. This evidence was permitted subject to it being connected to the defendants. The judge carefully warned the jury.

THE COURT: Ladies and gentlemen, you are going to have to listen to it with great care because unless it is connected up in some way with these Defendants, part of the same organization or group, what may have happened or the treatment they received by somebody else, it is very hard for me to tell at this point whether it is going to be connected up. So listen to it and reserve judgment as to whether you think it has any weight until we find out whether the people that caused her this annoyance are part of the same group, organization, that these Defendants are.

This warning was repeated twice during the trial (Tr. 122, 300) and the court, in its final instruction, excluded the evidence stating:

THE COURT: Ladies and gentlemen, I should take care of a matter that I should have, perhaps, taken care of earlier, I discussed it with counsel, there was earlier in the case some evidence with respect to conduct of the police which might be characterized harrassment. [*sic*] And I admitted it that time subject to motion to strike if it could not be connected with these defendants.

Upon reviewing the matter it is my opinion that the evidence does not connect to any of those acts of harrassment [*sic*] with these defendants and therefore I have stricken it and ask you to disregard it. This, of course, does not mean that you may not consider the evidence of earlier acts on the part of the defendant Rios. But you will recall there was testimony of other acts of harrassment [*sic*] long before the night of the arrest. And the parties participating were not identified and there has been no showing that these particular defendants participated or were connected in any way, so, just disregard that part of the evidence.

While it might have been preferable for the district judge to ask for an offer of proof from the government before admitting the testimony initially, his instructions were sufficient to erase whatever prejudicial effect it may have had. Moreover, our review of this testimony, which was disjointed and rambling, convinces us that it could have had only a minimal prejudicial effect, if any.

### 4. *The Arrest Report and Appellant's Grand Jury Testimony.*

■ Appellant did not testify. The court allowed the government to introduce in evidence the arrest report made out by him and his grand jury testimony. Appellant argues that this violated his fifth amendment right against self-discrimination. We fail to see how this implicated in any way the appellant's right against self-incrimination. The fifth amendment proscribes compelled self-incrimination, not incriminating statements. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48

L.Ed.2d 39 (1976), the Supreme Court held that documents prepared by taxpayers' accountants and in the possession of their attorneys could be subpoenaed and used in evidence against them and that such production and use did not implicate any fifth amendment privilege. In the course of its opinion, the court stated: "It is also clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Id.* at 408, 96 S.Ct. at 1579. The use of the arrest report clearly does not come within the ambit of the fifth amendment.

As for the grand jury testimony, there has been no claim that appellant was not fully informed of his rights prior to testifying before the grand jury, nor could there be one. *See* pages 1, 2 and 3 of Exhibit 12, Grand Jury Testimony by Appellant. The use of the grand jury testimony did not violate any constitutional rights of appellant.

■ Out-of-court statements of an accused, either oral or written, are routinely admitted in criminal cases. The defendant then has to weigh the advantages of answering or explaining the statements against the dangers of taking the witness stand and subjecting himself to cross-examination. Appellant had not challenged the accuracy of either statement and, since both were made by him, there was no confrontation problem. *See* 4 Weinstein's Evidence § 800[04]. The Supreme Court stated the traditional and accepted rule in *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974):

> Whether or not Mrs. Graff's statements were hearsay, the respondent's own out-of-court admissions would surmount all objections based on the hearsay rule both at the suppression hearings and at the trial itself, and would be admissible for whatever inferences the trial judge could reasonably draw concerning joint occupancy of the east bedroom. *See* 4 J. Wigmore, Evidence § 1048 (J. Chadbourn

rev. 1972); C. McCormick, Evidence § 262 (2d ed. 1972)

The report and grand jury testimony were clearly exempt from the hearsay rule under Federal Rule of Evidence 801(d)(2)(A):

> (d) *Statements which are not hearsay.*—A statement is not hearsay if—
>
> . . . . .
>
> (2) Admission by party-opponent.—The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity . . . .

The arrest report gave important details as to what happened on the night of the arrest. While not an admission against interest in the traditional sense, it clearly comes within the scope of the rule.

Rule 801(d)(2) represents an accommodation to the common sense view that statements of a principal actor should generally be received rather than excluded per se. Because of their value they are receivable whether or not the declarant is available or appears as a witness. 4 Weinstein's Evidence § 801(d)(2) [01], p. 801–115.

In accordance with the orthodox view and previous practice in the federal courts, the party's statement need not have been against interest ·when made, need not be based on personal knowledge and may be in the form of an opinion. 4 Weinstein's Evidence § 801(d)(2)(A) [01], p. 801–116–117. The grand jury testimony also falls within the ambit of Federal Rule of Evidence 801(d)(2)(A).

While the discrepancy between the statements was not glaring, it was of sufficient import to be considered by the jury, both on the question of credibility and as to what actually happened on the night of the arrest. In the arrest report, appellant stated: "When the undersigned presented the Arrest Warrant they offered resistance; they hit me with hands and feet." In his grand jury testimony, appellant stated that Sergeant Vargas served the arrest warrant and there was no mention of resistance by the complainants until they reached the parking lot.

It was neither a violation of appellant's constitutional right nor evidentiary error to submit the arrest report and the grand jury testimony to the jury for its consideration.

5. *Inconsistent Verdicts.*

 This alleged error needs little comment. It is established law that the jury has the prerogative to return inconsistent verdicts. *United States v. Mastorano,* 557 F.2d 1, 8 (1st Cir. 1977), *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Moreover, we cannot say on the basis of our examination of the record that the verdicts were, in fact, inconsistent. There was a great deal of disputed testimony as to what happened and as to which of the defendants beat and assaulted which of the complainants. Given the jury's absolute right to find the facts and determine credibility, it cannot be said with certainty that the verdicts were inconsistent.

*Affirmed.*