[Cite as *State v. McInnes*, 2026-Ohio-734.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115053 |
| IAN W. MCINNES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 5, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681351-I

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew Rogalski, Samantha Sohl, and Tasha Forchione, Assistant Prosecuting Attorneys, *for appellee.*

Susan J. Moran, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Ian W. McInnes ("McInnes") appeals his convictions and sentence. He claims the following errors:

1. The trial court erred by creating a burden upon the appellant to establish an affirmative defense which is not required by law, violating

Mr. McInnes' right to due process and a fair trial, as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2. The trial court erred in failing to dismiss Mr. McInnes's indictment since he was shielded from criminal prosecution by qualified immunity.

3. The trial court deprived Mr. McInnis of his right to due process and a fair trial as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution and it allowed the state's witnesses to provide inadmissible testimony regarding use of force, which was not compliant with Fourth Amendment considerations as provided in *Graham v. Connor*.

4. Mr. McInnes's convictions are against the manifest weight of the evidence in violation of his right to due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

5. The evidence in this case is legally insufficient to justify Mr. McInnes's convictions, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

6. The court erred by denying Mr. McInnes's right of confrontation under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

7. The trial court erred in allowing the use of Mr. McInnes's *Garrity* statements against him in a criminal prosecution in violation of his right against self-incrimination protected by the Fifth and Fourteenth Amendments to the United States Constitution.

8. The trial court erred in failing to unseal and provide the defense with the requested grand jury transcripts to ensure the grand jury utilized the proper probable cause standard and reveal possible *Garrity* violations.

9. The trial court erred in imposing a sentence which was not supported by the record and was contrary to law.

{¶ 2} We find that the trial court properly placed the burden of proving the affirmative defense of reasonableness on McInnes, by a preponderance of the evidence. We also find that the trial court properly overruled McInnes's motion to dismiss the indictment, the State's witnesses were permitted to give lay and expert opinions regarding the reasonableness of the force used to apprehend suspects, and that McInnes's convictions are supported by sufficient evidence and are not against the manifest weigh of the evidence. McInnes's guaranteed right of confrontation under the Sixth Amendment to the United States Constitution was not violated and there were no *Garrity* violations. McInnes was not entitled to the grand-jury transcripts, and his sentence was supported by the record and not contrary to law. Accordingly, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} McInnes, a police officer, was charged with ten other East Cleveland police officers in a 62-count indictment with three counts of attempted felonious assault, four counts of assault, four counts of interfering with civil rights, four counts of dereliction of duty, and two counts of felonious assault. The charges related to his alleged use of excessive force while interacting with four citizens on four separate dates.

{¶ 4} Prior to trial, McInnes filed a motion to dismiss the three counts of attempted felonious assault alleged in Counts 37, 42, and 46; four counts of assault alleged in Counts 38, 43, 47, and 55; and one count of felonious assault alleged in Count 52. He argued those counts should be dismissed because the grand jury was

not properly instructed on whether he acted reasonably as a police officer when he exercised the use of force. McInnes also filed multiple motions to obtain the grand-jury transcripts so he could determine whether the jury had been instructed on what constitutes a "reasonable" use of force. The trial court denied the motions to dismiss and for the grand-jury transcripts, and the case proceeded to a jury trial. The witnesses at trial testified with regard to the four separate incidents involving four different individuals.

{¶ 5} Todd Carroscia ("Carroscia"), a patrol-division commander in the East Cleveland Police Department, explained the department's policy and procedures regarding the use of force. (Tr. 559.) He explained that when an officer uses force with an individual, he or she is obligated to describe the force used and the circumstances surrounding the use of force in a report called "Form M." (Tr. 560-561.) According to Carroscia, the East Cleveland Police Department was "short-staffed" and the officers were "overworked." (Tr. 603.) However, he explained that the shortage of manpower is not an excuse to break the law or to not follow the department's policies. (Tr. 604.) Carroscia testified that he never had any issues with McInnes personally and that he made "fair calls." (Tr. 603.)

### A. Zievan Foster

{¶ 6} Craig Beese ("Beese"), who worked as an East Cleveland police officer from the spring of 2016 until September 2021, testified that on February 25, 2020, he attempted to stop an individual for speeding. The individual, subsequently identified as Zievan Foster ("Foster"), refused to stop, and Beese pursued him at a

high rate of speed until Foster's vehicle hit a tree. McInnes assisted in the pursuit of Foster. After hitting the tree, Foster fled on foot behind a home where another officer, Demarcko Johnson ("Johnson"), tased him and caused him to fall to the ground.

{¶ 7} Johnson was wearing a body camera that captured video of Foster's fall to the ground. The video, which was played for the jury and admitted into evidence as State's exhibit No. 100, shows Foster lying face down on a driveway as McInnes approached him and appeared to kick him in the ribs before placing him in handcuffs.

{¶ 8} Beese testified that he was the supervising officer responsible for reviewing McInnes's use of force. (Tr. 678.) Johnson told Beese about his use of the Taser, but McInnes did not tell him about the kick. (Tr. 678-683.) Once McInnes's use of force was discovered, Beese reported it in a "Form M." When Beese questioned McInnes about the kick, he told Beese that he slipped on a crack in the driveway and that he did not intend to kick Foster. (Tr. 686-687.) Beese thought the kick was significant because "the subject was already in control due to the Taser deployment . . . ." (Tr. 683.)

{¶ 9} Special Agent Shaun Roth ("Roth") of the Federal Bureau of Investigation ("FBI") testified that he investigated McInnes's use of force as part of his assignment to the public corruption and civil rights squad. (Tr. 978.) He reviewed Johnson's body-camera video as part of his investigation. In describing

the video, he stated, "[Foster] is laying proned out, as he is instructed to do. At that time, Ian McInnes comes and kicks the individual in the side." (Tr. 991.)

{¶ 10} Foster testified at trial that he fled from police because he was afraid they would hurt him or shoot him. (Tr. 632 and 641-642.) After being tased, Foster showed his hands to the police to let them know he was not armed. (Tr. 641.) Foster testified that even though his hands were above his head, an officer came "up and kicked me before he put me in handcuffs." (Tr. 641.)

{¶ 11} As previously stated, Beese indicated that although Johnson reported his use of the Taser to subdue Foster, McInnes did not report the fact that he kicked Foster. (Tr. 683.) McInnes testified that he went with Johnson to report the use of force to Beese. (Tr. 1656.) McInnes further stated that when Beese asked McInnes what happened, he told him, "[H]ey, I was running. I didn't intend to do this. I lost my footing. I was trying to catch myself." (Tr. 1656.)

{¶ 12} The State's expert on police conduct, Robert Prevot ("Prevot"), reviewed Johnson's body-camera video. In his opinion, as soon as Foster was on the ground with his hands out, it was obvious that he did not have a weapon and, at that point, "he, pretty much surrendered." (Tr. 1108.) Although Foster rolled over onto his back, he was still not a threat because he was not armed and he was "waiting to be cuffed." (Tr. 1110.) He was not trying to run away, and he was not resisting. (Tr. 1110.) Reading from his report, Prevot opined, in relevant part:

> "Officer McInnes kicked Mr. Foster on the right side of his rib cage while Mr. Foster was on the ground. Mr. Foster was not attempting to flee or resist.

> "The only use of force justified in this incident after he was tased was to place handcuffs on Mr. Foster and assess him for any injuries that he may have suffered in the collision. Instead, Officer McInnes used excessive use of force to potentially cause further injury to Mr. Foster.
>
> "The use of force by Mr. McInnes when he kicked Mr. Foster was objectively unreasonable."

(Tr. 1113-1114.)

{¶ 13} McInnes's expert, Kevin Davis (Davis"), testified that McInnes's kick "was standard practice when a person continues to resist." (Tr. 1517.) In his opinion, the kick was reasonable under the circumstances. However, Davis admitted on cross-examination that McInnes did not report the kick to his supervisor and did not have his own body camera activated. (Tr. 1595.) It was only when Beese asked him to provide a description of what happened with Foster that McInnes reported that he slipped. (Tr. 1595.) When asked whether his expert report mentioned anything about slipping, Davis replied, "No, it does not." (Tr. 1591.)

## B. Wayne Brown

{¶ 14} Roth testified that he learned of the matter involving Wayne Brown ("Brown") because a witness published a video of the incident on social media. (Tr. 995, 998, and 1233.) No report of force had been made of the incident. (Tr. 1235.) Roth and Robert DeSimone ("DeSimone"), a special investigator with the Cuyahoga County Prosecutor's Office, investigated the incident and learned that, on February 14, 2022, Brown was present at the Best Steak & Gyro Restaurant in East Cleveland when police received a call about a violent person. Police, including

McInnes, arrived on the scene and attempted to secure Brown. McInnes instructed Brown to lie down on his stomach on the ground. Brown, who suffers from mental illness, seemed confused and did not immediately comply with police orders. With repeated commands, Brown eventually got down on his knees and placed his hands behind his head. Roth explained:

> He put himself down on his knees and put his hands behind his back, and now you see there is nothing in his hands. At that point, you can execute the arrest just as he is.

(Tr. 1001.) But instead of handcuffing Brown, McInnes kicked Brown in the back. (Tr. 1000.) Roth described the incident as follows:

> [J]ust watching the video, what is of significance is that the victim, Mr. Wayne Brown, is on his knees with his hands behind his back, and then he is kicked in the back slamming his head down and almost hitting the cement wall in front of him.

(Tr. 1000-1001.)

{¶ 15} McInnes testified that his objective was to gain compliance and that Brown started to show compliance by dropping to one knee. (Tr. 1667.) McInnes stated, however, that Brown "reached for his leg" and that he did not know what Brown was reaching for. He explained:

> So when he reached for his ankle and started to drop back, I made a tactical decision to use my foot, displacing him to the ground, giving me a tactical advantage in the event he did grab a weapon.

(Tr. 1668.)

{¶ 16} Both experts reviewed the video evidence and expressed their opinions to the jury. Davis explained that because Brown ignored several

commands to get down on the ground and because his hands were not visible for a substantial part of McInnes's interaction with him, it was reasonable for McInnes to consider Brown a threat. (Tr. 1532-1534.) Davis concluded that "Officer McInnes's use of a push kick under these circumstances is within a range of reasonable police uses of force." (Tr. 1534.) He admitted, however, that McInnes's actions created a risk of secondary injury if Brown hit his head as a result of being kicked in the back. (Tr. 1606-1607.)

{¶ 17} Prevot acknowledged that it was initially unknown whether Brown was a threat to police when they arrived on the scene because Brown was wearing a puffy coat that might have concealed weapons. Brown was also slow to comply with McInnes's commands. Nevertheless, Prevot opined that the potential threat Brown might have posed was removed when he got down on his knees and placed his hands behind his head. Prevot explained:

> Basically my opinion at that moment when he applied the force was that it was objectively unreasonable. He could have just handcuffed him, picked him up, and do what he was going to do.
>
> By kicking him and making him fall forward, he could have been a threat again. I don't know what purpose the kick served other than to cause pain. By process of elimination, there was nothing else to do, except put him in handcuffs.

(Tr. 1127.)

### C. Da'Shawn Allen

{¶ 18} Da'Shawn Allen ("Allen") testified that, on October 3, 2021, he was driving a stolen vehicle when police attempted to pull him over. (Tr. 721.) Instead

of stopping, Allen, who was 17 years old at the time, lead police on a high-speed chase because he "was scared." (Tr. 722.) According to Allen, a police car repeatedly "bumped" into his car during the pursuit. (Tr. 723 and 748.) Eventually, Allen's vehicle collided with another car, and Allen fled from the police on foot. (Tr. 723.)

{¶ 19} Allen explained that his back hurt so he stopped running, got on his knees, and put his hands up. (Tr. 724.) Police officers approached him and arrested him. Allen described the arrest as follows:

> I got on my knees. They told me stop resisting. I said, "I'm not resisting." They cuffed me, picked me up, punched me in the forehead. I fell back down. They picked me up again and punched me in the forehead again. And I fell back down again.

> And when I fell back down, they said stop resisting. I'm not resisting. They started dragging me across the floor, start stumping me. And I couldn't do nothing. I was handcuffed. They broke both my hands.

(Tr. 724.) Allen further stated that while he was on ground, someone kicked him in the groin and he screamed in pain. (Tr. 726-727.)

{¶ 20} Roth testified that the FBI established a tip line in October 2022, after several FBI investigations uncovered "numerous criminal activities" in East Cleveland. (Tr. 1012.) The FBI learned about Allen's arrest and the alleged use of excessive force when his mother reported it to the tip line. (Tr. 1237.)

{¶ 21} As part of his investigation, Roth obtained records pertaining to Allen's arrest, including the vehicle-pursuit report, docket-type records, and body-camera footage. Roth also obtained records from the Cleveland Police Department related to its investigation of the car accident that occurred in the City of Cleveland.

{¶ 22} Regarding the body-camera video, which was admitted into evidence as State's exhibit No. 301, Roth testified that Allen can be seen "laying flat on his stomach with his hands restrained behind his back." (Tr. 1024.) After watching the video in open court, Roth stated, "We just saw Defendant Ian McInnes strike Da'Shawn Allen in the groin with his foot while his arms were restrained behind his back." (Tr. 1025.) When asked how he could tell that McInnes was the individual who kicked, he explained that McInnes's face becomes visible when the video continues to play a little longer. (Tr. 1025.) McInnes was also wearing a watch, which is visible after the police lifted Allen off the ground moments after Allen was kicked in the groin. (Tr. 1026.)

{¶ 23} DeSimone also described the action depicted in State's exhibit No. 301. He stated:

> First, I observed Allen on the ground, sitting there crouching with his hands up, not resisting. He was ready to be handcuffed. The officers, as far as McInnes goes — two officers were handling him already on the ground attempting to cuff him. Officer McInnes can be seen coming into view and squarely kicking him in the groin.

(Tr. 1273.) When asked where Allen was positioned when McInnes approached, DeSimone replied, "He is on the ground, his hands are behind his back, face down, and his legs were open." (Tr. 1273.) Allen also stated that two East Cleveland police officers were restraining Allen on the ground when McInnes kicked him. (Tr. 1273.)

{¶ 24} Davis believed the video quality was not sufficient to see where McInnes placed his foot. (Tr. 1543.) He also noted that Allen never complained of

being struck in the groin at the time. (Tr. 1543.) When asked whether he believed McInnes acted reasonably, Davis stated:

> I believe that a kick to the inside of the thigh or to the leg area of Mr. Allen under these circumstances would be within a range of reasonable police actions based on the totality of the circumstances.

(Tr. 1546.)

{¶ 25} Prevot offered his expert opinion on Allen's arrest as stated in his report:

> "A review of the body-worn cameras in this case show Officer McInnes kicking Mr. Allen in the groin. Mr. Allen was already subdued and was not resisting or threatening anyone when he was intentionally kicked in the groin by Officer McInnes.
>
> . . .
>
> "This assault was intentional, objectively unreasonable, and a violation of Mr. Allen's civil rights. Mr. Allen screamed out in pain after he was kicked."

(Tr. 1141.)

### D. Bernard Bennett

{¶ 26} Bernard Bennett testified that on April 12, 2022, he fled from East Cleveland police when they attempted to effect a traffic stop of his vehicle. He led police on a high-speed chase that ended when he struck a utility pole. Bennett fled from his car on foot, and East Cleveland police continued to pursue him to the intersection of East 113th Street and St. Clair Avenue in Cleveland. During the chase, Bennett ran into a side street and was struck by a police cruiser operated by McInnes.

{¶ 27} Sergeant Ryan Fox ("Fox"), an accident reconstructionist with the Ohio State Highway Patrol, testified that he reconstructed the crash using a surveillance camera from the area, body-camera videos, and data collected from the vehicles' black boxes. (Tr. 938-939.) Fox reviewed McInnes's reaction time in relation to Bennett running into the street and concluded that his reaction was appropriate under the circumstances. (Tr. 965-967.) Prevot also found that without evidence to the contrary, he could not conclude that McInnes intentionally struck Bennett with his car. McInnes's expert, Davis, agreed that McInnes's striking of Bennett appeared to be an accident. (Tr. 1560.)

### E. Jury Verdict and Sentence

{¶ 28} After hearing all the evidence, the jury found McInnes not guilty of the attempted felonious assault, but guilty of assault, interfering with civil rights and dereliction of duty in connection with McInnes's arrest of Foster; guilty of attempted felonious assault, assault, interfering with civil rights and dereliction of duty in connection with his arrest of Brown; not guilty of attempted felonious assault, but guilty of assault, interfering with civil rights and dereliction of duty in connection with the arrest of Allen; and not guilty of any of the charges pertaining the arrest of Bennett.

{¶ 29} After merging allied offenses of similar import, the trial court sentenced McInnes to 180 days in jail on each of his assault convictions alleged in Counts 38 and 47, 180 days in jail on each of his interfering-with-civil-rights convictions alleged in Counts 40, 44, and 48, and 30 months in prison on his

attempted-felonious-assault conviction alleged in Count 42. The court ordered the sentences to be served concurrently for an aggregate 30-month prison term. McInnes now appeals his convictions and sentences.

## II. Law and Analysis

## A. Reasonableness Defense

{¶ 30} In the first assignment of error, McInnes argues the trial court erred by shifting the burden of proof onto McInnes to establish the affirmative defense that his use of force was reasonable. He contends the State bore the burden of proving, beyond a reasonable doubt, that McInnes's use of force was unreasonable.

{¶ 31} For reasonableness to constitute an affirmative defense, it must meet the definition of either an "excuse" or "justification." R.C. 2901.05(D)(1)(b). The term "excuse" has been defined as a "'reason that justifies an act or omission or that relieves a person of a duty' or a 'defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal.'" *State v. Faggs*, 2020-Ohio-523, ¶ 21, quoting *Black's Law Dictionary* 688 (10th Ed. 2014). The term "justification" has been defined as a "'lawful or sufficient reason for one's acts or omissions; any fact that prevents an act from being wrongful' or a 'showing, in court, of a sufficient reason why a defendant acted in a way that, in the absence of the reason, would constitute the offense with which the defendant is charged.'" *Id.*, quoting *Black's* at 997. Thus, where a police officer admits to the use of force but claims the use of force was reasonable in the course of his official duties, the defense

is a claim for justification or excuse. *See, e.g., State v. Bolton*, 2018-Ohio-1551, ¶ 20-21 (6th Dist.)

{¶ 32} R.C. 2901.05 governs burdens of proof in criminal cases and states, in relevant part:

> Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused.

R.C. 2901.05(A). The statute clearly provides that the State bears the burden of proving, beyond a reasonable doubt, all the elements of the charged offenses, and the defendant bears the burden of proving an affirmative defense, by a preponderance of the evidence. *Id.* The defendant's burden of proving an affirmative defense is subject to three enumerated exceptions, namely self-defense, defense of another, and defense of the accused's residence. *Id.*

{¶ 33} Reasonable use of force in the course of a police officer's official duties is not one of the enumerated exceptions in R.C. 2901.05(A). *See Bolton* at ¶ 20-21. (Police officer defendant must prove his affirmative defense of justification by a preponderance of the evidence.); *State v. Brelo*, Cuyahoga C.P. No. CR-13-580457A, 2015 Ohio Misc. LEXIS 54, *41-43 (Oct. 14, 2014) (Police officer must prove by a preponderance of the evidence that he was legally justified in using deadly force on the victims.). Therefore, according to the plain language of the statute, a police

officer defendant bears the burden of proving, by a preponderance of the evidence, that his or her use of force was reasonable under the circumstance.

{¶ 34} The court in this case instructed the jury regarding McInnes's affirmative defense as follows:

> Defendant Ian McInnes asserts an affirmative defense that he was justified in his use of force in the exercise of his official duties as a police officer. . . .

> The burden of going forward with the evidence of the affirmative defense and the burden of proving this defense are upon the defendant Ian McInnes. In order to establish this defense, the defendant must prove by preponderance of the evidence that he was acting in pursuit of his official duties and that his use of force was objectively reasonable under the circumstances.

> . . .

> If the defendant fails to establish by its preponderance of the evidence that his actions were justified in his use of force in the exercise of his official duties as a police officer, the State must still prove to you beyond a reasonable doubt all the elements of the crime.

(Tr. 1752-1754.) The jury's instruction correctly placed the burden of proving the reasonable-use-of-force defense on McInnes, by a preponderance of the evidence. It also properly placed the burden on the State to prove, beyond a reasonable doubt, all the elements of the offenses charged. Therefore, the first assignment of error is overruled.

## B. Qualified Immunity

{¶ 35} In the second assignment of error, McInnes argues the trial court erred in denying his motion to dismiss the indictment. He argues the trial court should have dismissed the case because he was shielded from liability under the

doctrine of qualified immunity even if he mistakenly exceeded the amount of force necessary under the circumstances.

{¶ 36} Ordinarily, we review "a trial court's decision on a motion to dismiss an indictment for abuse of discretion." *State v. Hudson*, 2022-Ohio-1435, ¶ 19. However, when the issue presented raises a question of law, we review the trial court's judgment de novo. *Id.* In a de novo review, we afford no deference to the trial court's decision. *State v. Buehner*, 2021-Ohio-4435, ¶ 43 (8th Dist.).

{¶ 37} "A motion to dismiss tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced at trial." *State v. Preztak*, 2009-Ohio-621, ¶ 12 (8th Dist.), citing *State v. Patterson*, 63 Ohio App.3d 91, 111 (2d Dist. 1989). If the indictment is valid on its face, a motion to dismiss should not be granted. *Id.*, citing *State v. Eppinger*, 2005-Ohio-4155, ¶ 36 (8th Dist.) ("Where a motion to dismiss requires examination of evidence beyond the face of the indictment, it must be presented as a motion for acquittal at the close of the state's case."). In determining whether an indictment is valid on its face, the proper inquiry is whether the allegations contained in the indictment constitute an offense under Ohio law. *Eppinger* at ¶ 37.

{¶ 38} McInnes argues the indictment should have been dismissed because the doctrine of qualified immunity shields him from criminal liability. "The doctrine of qualified immunity generally shields public officials performing discretionary functions from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Cleveland Constr., Inc. v. Cincinnati*, 2006-Ohio-6452, ¶ 80 (1st Dist.), *overruled on other grounds*, *Cleveland Constr., Inc. v. Cincinnati*, 2008-Ohio-2337, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

{¶ 39} The doctrine of qualified immunity does not apply to criminal prosecutions; it is exclusively applicable in civil cases, particularly those brought under 42 U.S.C. 1983, to shield government officials from personal liability for damages when their conduct does not clearly violate established law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

{¶ 40} In *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976), the Court explained that although government officials may enjoy immunity from civil liability, the public is not powerless to deter misconduct or to punish it when it occurs because government officials remain subject to criminal liability. In *United States v. Gillock*, 445 U.S. 360, 372 (1980), the Court explained:

> "Whatever may be the case with respect to civil liability generally . . . or civil liability for willful corruption . . . we have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights."

*Id.*, quoting *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974). *See also United States v. Dee*, 912 F.2d 741, 744 (4th Cir. 1990) ("Suffice it to say that sovereign immunity does not attach to individual government employees so as to immunize them from prosecution for their criminal acts.").

{¶ 41} McInnes nevertheless cites *Saucier v. Katz*, 533 U.S. 194 (2001), and *Pearson v. Callahan*, 555 U.S. 223 (2009), in support of his claim for qualified immunity. However, both of these cases addressed the application of qualified immunity in the context of civil litigation. *Pearson* expressly distinguishes application of qualified immunity between civil and criminal cases, observing that "[m]ost of the constitutional issues that are present in § 1983 damages actions and *Bivens* cases also arise in cases in which that defense is not available, such as criminal cases . . . .[1]" *Id.* at 242. Therefore, *Saucier* and *Pearson* are inapplicable to the case at bar.

{¶ 42} Furthermore, Ohio law does not provide immunity from criminal liability. Although the Ohio Revised Code provides limited forms of criminal immunity in narrow contexts (e.g., for witnesses[2] and statutory exemptions for officers[3]), no statute provides blanket immunity to police officers for assault or other forms of excessive use of force. R.C. 9.86 provides immunity to government employees and officials for negligent acts performed in their official capacities, and R.C. Ch. 2744 provides immunity to political subdivisions, but these sections only provide immunity from civil liability, not criminal liability. Indeed, in *Cleveland v. Graham*, 2024-Ohio-336 (8th Dist.), the court denied a police officer's request to

---

[1] A *Bivens* action is a lawsuit against federal law enforcement officers for money damages for violating one's constitutional rights under color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

[2] R.C. 101.44 and 2945.44.

[3] R.C. 4511.191(A)(5)(b).

apply the political-subdivision immunity provided in R.C. Ch. 2744 in his criminal case, stating the question as to whether to confer immunity from criminal liability "is best left to the legislature." *Id.* at ¶ 74. The legislature has not provided immunity to police for excessive-use-of force crimes. *Id.*

{¶ 43} Finally, McInnes argues his indictment was defective on its face because the offenses alleged therein did not include the absence of a reasonableness finding as an element of the offenses. He contends that "[b]ecause the 'unreasonableness' of Mr. McInnes's alleged action was an element of the offense, the grand jury was required to find probable cause that the 'unreasonable' element exists." (Appellant's brief p. 12.) However, McInnes was charged with, and was convicted of, attempted felonious assault in violation of R.C. 2923.02/2903.11; assault in violation of R.C. 2903.13(A); interfering with civil rights in violation of R.C. 2921.45(A); and dereliction of duty in violation of R.C. 2921.44(B). There is no "unreasonable" element in any of these offenses. And, as previously stated in the first assignment of error, reasonable use of force in the course of a police officer's official duties is not one of the enumerated exceptions to the defendant's burden of proving an affirmative defense as provided in R.C. 2901.05(A). Therefore, the indictment was not defective on its face for failing to allege unreasonableness as an element of the offenses.

{¶ 44} The second assignment of error is overruled.

## C. Expert and Lay Testimony

{¶ 45} In the third assignment of error, McInnes argues the trial court abused its discretion by admitting into evidence lay and expert testimony regarding his use of force.

{¶ 46} The admission of evidence lies within the broad discretion of a trial court. *State v. Noling*, 2002-Ohio-7044, ¶ 43. We, therefore, will not disturb the trial court's evidentiary decisions absent an abuse of discretion. *Id.*

{¶ 47} An abuse of discretion occurs when the trial court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 48} However, "a trial 'court does not have discretion to misapply the law.'" *Morgan v. Greater Cleveland Regional Transit Auth.,* 2025-Ohio-1655, ¶ 64 (8th Dist.), quoting *Johnson* at ¶ 38. "Thus, an abuse of discretion also occurs when a court '"applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."'" *Id.*, quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), quoting *Berger v. Mayfield*, 265 F.3d 399 (6th Cir. 2001).

{¶ 49} McInnes argues the trial court erred by allowing Roth, Prevot, and DeSimone to offer expert opinions regarding the appropriate use of police force. McInnes further contends that Roth, Prevot, and DeSimone impermissibly opined on the ultimate issue of whether McInnes used excessive force against the four victims identified in the indictment.

{¶ 50} Testimony on an ultimate issue is not per se inadmissible in Ohio. Evid.R. 704 provides that "[t]testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

{¶ 51} Only Prevot was officially qualified as an expert by the trial court. Roth and DeSimone testified as lay witnesses. Evid.R. 701 governs the opinion testimony by lay witnesses and states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶ 52} Evid.R. 702 governs expert testimony. To be admissible, expert testimony must (1) relate to scientific, technical, or other specialized knowledge; (2) assist the trier of fact to understand the evidence or to determine a fact in issue; (3) be relevant and material to an issue in the case; and (4) have a probative value that outweighs any prejudicial impact. *State v. Jackim*, 2009-Ohio-6640, ¶ 41 (8th Dist.).

### 1. Roth's Testimony

{¶ 53} Roth first testified regarding McInnes's arrest of Foster. After the jury viewed Johnson's body-camera footage of the arrest, Roth described the acts depicted in the video, stating that Foster was on the ground after being tased with arms "proned out" when McInnes "comes and kicks the individual in the side." (Tr. 991-992.) Defense counsel did not object to this testimony, presumably because

the jury had just seen the video of the incident and could see for themselves what had occurred.

{¶ 54} In *State v. Rivers*, 2025-Ohio-40, ¶ 45-48 (8th Dist.), we held that a trial court did not err in allowing a detective to identify the defendant as the shooter from a video played in open court because the testimony was based on the detective's perception and was helpful to the jury, and the jury could see the video for themselves.

{¶ 55} Roth's testimony regarding what transpired during Foster's arrest was based on a video that was played for the jury. The jury was free to agree or disagree with Roth's characterization of McInnes's actions based on their own observations. Therefore, the trial court did not err in allowing this testimony into evidence.

{¶ 56} Roth's testimony regarding McInnes's interaction with Brown was based on the video of a bystander, who recorded the event and posted it on social media, and McInnes's body-camera video, both of which were played for the jury. Roth stated that Brown was on his knees and his hands were behind his back when McInnes kicked him in the back, driving his head forward toward the wall. As with the Foster incident, the jury was free to agree or disagree with Roth's description based on their own observation of the video evidence.

{¶ 57} Roth further stated that when Brown got on his knees, he was "vulnerable." Roth further stated: "He put himself down on his knees and put his hands behind his back, and now you see there is nothing in his hands. At that point, you can execute the arrest just as he is."

{¶ 58} McInnes argues Roth's opinion that Brown was "vulnerable" offered nothing regarding the use of force and was merely an attempt to garner sympathy for Brown. He further argues that Roth's testimony "amounted to 'should have' testimony which is impermissible." (Appellant's brief p. 24.)

{¶ 59} Roth's testimony provided context, a permissible form of lay opinion. In *State v. Gale*, 2011-Ohio-1236, ¶ 15 (8th Dist.), quoting *State v. Crenshaw*, 1992 Ohio App. LEXIS 2831 (8th Dist. June 4, 1992), we held that "'[a] police officer may testify to matters within his experience and to his own observations which may assist the trier of fact in understanding other testimony.'" Similarly in *State v. Garrett*, 2022-Ohio-4218, ¶ 190-194, the Ohio Supreme Court held that a detective could provide lay-opinion testimony regarding a victim's knife wounds because the detective's opinion was "based on his experience in processing crime scenes" and "on his experience as a homicide detective." *Id*. at ¶ 191.

{¶ 60} Roth's explanation as to how McInnes could have arrested Brown once he was down on his knees with his hands behind his back was based on his own observations and his experience as a law-enforcement officer. His law-enforcement experience could be helpful to the jury. Moreover, because the jury watched the videos, they were able to judge the credibility of Roth's commentary. We, therefore, find no error in the admission of Roth's testimony regarding McInnes's interactions with Brown.

{¶ 61} When Roth was asked about his investigation of the Allen incident, he began by stating:

> So, due to the numerous criminal activities we've uncovered with the city of East Cleveland Police Department, we established a tip line. So once that tip line was established around October 6th, 2022, we received a call from Da'Shawn Allen's mother to report a crime against her son.

(Tr. 1012.) McInnes argues this remark was unfairly prejudicial. However, McInnes's trial counsel did not object to this testimony. He, therefore, forfeited all but plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 3, ¶ 21 (Failure to object to an error in the trial court forfeits all but plain error on appeal.).

{¶ 62} Crim.R. 52(B) authorizes appellate courts to correct "'[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Mosby*, 2024-Ohio-5210, ¶ 24 (8th Dist.), quoting Crim.R. 52(B). To prevail under a plain-error analysis, the appellant bears the burden of demonstrating that, but for the error, the outcome of the trial would clearly have been different. *State v. Payne*, 2007-Ohio-4642, ¶ 17.

{¶ 63} Roth's comment regarding "numerous criminal activities" was not unfairly prejudicial to McInnes because Roth did not impute the criminal activities to McInnes. The comment referred to criminal activities in the East Cleveland Police Department. The jury also would have known about multiple alleged crimes within the East Cleveland Police Department because they heard evidence of at least four separate incidents involving two different East Cleveland police officers. Therefore, even if this comment had not been made, it is doubtful the outcome of the trial would have been different.

{¶ 64} Nevertheless, McInnes also argues that Roth impermissibly testified to the "ultimate issue" of whether McInnes kicked Allen in the groin. He contends this was a disputed fact because of the poor quality of the video and because Allen did not report being kicked in the groin. However, Allen, himself, testified at trial that he was kicked in the groin. (Tr. 726.) His testimony was corroborated by the video, which shows someone kicking Allen in the groin and Allen crying out in pain immediately thereafter.

{¶ 65} Roth explained how law enforcement determined the identity of the individual who kicked Allen in the groin. When asked how he could tell that McInnes was the individual who kicked Allen, Roth answered: "Because if you continue the video, it will show his face. And, again, other officers that we talked to after seeing this video did identify it as Ian McInnes." (Tr. 1025.) Thereafter, the prosecutor replayed the video for the jury and Roth testified:

> Right there, if you go back a little bit, you will see the face. And there are other indicators on there if you watch some of the other body cam, as in Defendant Ian McInnes had a watch and another item on both of his wrists[.]

(Tr. 1026.)

{¶ 66} As previously stated, Evid.R. 701 allows a lay witness to offer an opinion if the opinion is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. In applying Evid.R. 701 to the lay testimony of a police officer, this court has held:

To satisfy the first prong of Evid.R. 701, the opinion of the lay witness must be "'one that a rational person would form on the basis of the observed facts.'" *State v. Mulkey*, 98 Ohio App.3d 773, 784 (10th Dist. 1994), quoting *Lee v. Baldwin*, 35 Ohio App.3d 47, 49 (1st Dist. 1987). And where a law enforcement officer "testified as a lay witness to opinions based on his experience as a police officer, his previous investigations, and his perception of evidence at issue," this first prong is satisfied. *State v. Walker-Curry*, 2019-Ohio-147, ¶ 12 (8th Dist.), citing *State v. Grajales*, 2018-Ohio-1124, ¶ 64 (5th Dist.).

The second prong of Evid.R. 701 requires that "the opinion . . . assist the trier of fact in understanding the testimony of the witness or determining a fact in issue." *State v. Sibert*, 98 Ohio App.3d 412, 426 (4th Dist. 1994), citing *Lee* at 49. Under this prong, a police officer's opinion testimony may be admissible to explain a fact at issue even when it is based on specialized knowledge. *Walker-Curry* at ¶ 13; *State v. Maust*, 2016-Ohio-3171, ¶ 19 (8th Dist.).

Under Evid.R. 701, "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *State v. Primeau*, 2012-Ohio-5172, ¶ 74 (8th Dist.), citing *State v. McKee*, 91 Ohio St.3d 292 (2001). And, generally, if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and helpful to determine facts in issue, the testimony is properly admitted as lay testimony under Evid.R. 701. *See Maust* at ¶ 18.

*State v. Harris*, 2020-Ohio-4461, ¶ 51-53 (8th Dist.).

{¶ 67} Roth's testimony meets the first prong of Evid.R. 701 because it was rationally based on his own perception of the video and other evidence related to the incident. Roth's testimony was also helpful to the jury because it explained a relevant aspect of the police investigation and how Roth identified McInnes as the individual who is seen kicking Allen in the video. Because Roth's testimony could assist the jury in understanding how police identified McInnes, it met the second

prong of Evid.R. 701. Therefore, Roth's testimony was admissible under Evid.R. 701.

{¶ 68} Furthermore, Roth did not state that kicking Allen in the groin constituted an unjustified and excessive use of force. He, therefore, did not expressly opine on the ultimate issue regarding whether McInnes used excessive force. We, therefore, find no error in the admission of this testimony into evidence.

### 2. Robert Prevot

{¶ 69} Prevot testified as the State's official use-of-force expert. Prior to Prevot's testimony, defense counsel objected to his testimony as an expert because another Cuyahoga County court previously disqualified him as an expert. The prosecutor conceded that Prevot had been disqualified in another case, but she explained he was disqualified because the case involved bribery and he did not have experience with bribery. (Tr. 1101.) However, he had almost 34 years of law-enforcement experience. (Tr. 1093.) During that time, he was responsible for investigating officer-involved shootings and use-of-force incidents. (Tr. 1094 and 1096.). He, therefore, had extensive experience with use-of-force cases, and his prior disqualification had no bearing on the instant case.

{¶ 70} Defense counsel nevertheless tried to discredit him because he was not familiar with *State v. White*, 2015-Ohio-492. The issue in *White* was whether a police officer could constitutionally be convicted of a firearm specification in Ohio. Prevot was from California, which could explain why he was not familiar with this particular aspect of Ohio law. (Tr. 1093.) Nevertheless, he was familiar with the

standard for assessing excessive force outlined in the landmark case of *Graham v. Connor*, 490 U.S. 386 (1989). (Tr. 1097.) And, after reviewing Prevot's credentials, we finding nothing in the record to indicate that he lacked the necessary expertise to address matters of excessive force.

{¶ 71} Nonetheless, McInnes argues the trial court erred in allowing Prevot to opine on an "ultimate issue" regarding his use of force during the arrest of Foster. Reading from his expert report, Prevot testified as follows:

> "The only use of force justified in this instance after he was tased was to place handcuffs on Mr. Foster and assess him for any injuries that he may have suffered in the collision. Instead, Officer McInnes used excessive force to potentially cause further injury to Mr. Foster. The use of force by Mr. McInnes when he kicked Mr. Foster was objectively unreasonable."

(Tr. 1114.) McInnes further argues that Prevot's analysis constituted impermissible "should have" testimony. Defense counsel did not object to this testimony and, therefore, forfeited all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 3 and 21.

{¶ 72} It is undisputed that Foster had just been in a car accident. Johnson's body-camera video showed Foster fall to the ground after being tased and that he was still laying on the ground with his hands outstretched above his head when McInnes approached him. (*See* State's exhibit No. 100.) The jury watched the body-camera video and could see McInnes's foot make contact with Foster's body.

{¶ 73} Prevot opined that McInnes intentionally kicked Foster and that such an act was "objectively unreasonable." McInnes testified that he slipped and that he did not intend to kick Foster. The jury was free to judge the credibility of the two

witnesses based on its own view of the body-camera video. Therefore, even if Prevot's opinion had been excluded, it would not have changed the outcome of the trial.

{¶ 74} McInnes argues Prevot's testimony regarding McInnes's interactions with Brown also offered impermissible opinion testimony regarding an "ultimate issue." He contends Prevot provided improper "should have done" testimony and impermissibly speculated that Brown was trying to cooperate. He objects to the following testimony:

> The problem is, when he gets kicked in the back, now he gets pushed forward, and his hands are not cuffed yet. Now he can put his hands back in front of him and become a threat again. Instead of just handcuffing while he is on his knees, he was kicked and is pushed forward, and now he can be a threat again.

(Tr. 1126.) This testimony explained why the kick in the back violated police training and procedure; it prolonged the threat. This is appropriate expert testimony.

{¶ 75} McInnes also objects to the following additional testimony:

> Basically my opinion at that moment when he applied the force was that it was objectively unreasonable. He could have just handcuffed him, picked him up, and do what he's going to do.

> By kicking him and making him fall forward, he could have been a threat again. I don't know what purpose the kick served other than the to cause pain. By process of elimination, there was nothing else to do, except put him in handcuffs.

(Tr. 1126-1127.)

{¶ 76} Defense counsel objected to the second part of this testimony, and the court sustained the objection. (Tr. 1127.) Therefore, Prevot's speculation that McInnes kicked Brown solely to cause him pain was properly excluded.

{¶ 77} Prevot's opinion that McInnes's use of force was objectively unreasonable in the first part of the above-quoted testimony was not excluded. However, he based his opinion on police policy and procedure. This is appropriate expert testimony. And again, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 78} Finally, McInnes argues Prevot should not have been permitted to opine that Brown was "trying to comply." However, Prevot explained that Brown's delayed responses suggested mental disability, which officers are trained to recognize and to de-escalate. This information would likely have been "beyond the knowledge or experience" of the lay members of the jury and would help them to understand the proper police procedure that should have been followed. Therefore, it was not improper and did not warrant exclusion.

{¶ 79} McInnes argues Prevot's testimony regarding the Allen incident also provided impermissible "ultimate issue" testimony. He contends Prevot inappropriately stated that McInnes kicked Allen in the groin and that Allen screamed in response. (Tr. 1138.) He contends this testimony ignored the fact that Allen had just crashed his car and "any movement could have caused a scream." (Appellant's brief p. 27.) He further argues that "Prevot's opinion testimony was the

result of perceptions after watching the video, something the jury was capable of doing on their own without the need for assistance from him." (Appellant's brief p. 27.) Defense counsel did not object to this testimony and, therefore, forfeited all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 3 and ¶ 21.

{¶ 80} We agree the jury was capable of determining whether Allen's scream was caused by a kick in the groin or something else. Therefore, the outcome of the trial would not have been different if Prevot had not offered that opinion.

{¶ 81} However, McInnes further argues Prevot was erroneously allowed to read the following opinion from his expert report regarding McInnes's intent:

> A: "A review of the body-worn camera in this case showed Officer McInnes kicking Mr. Allen in the groin. Mr. Allen was already subdued and was not resisting or threatening anyone when he was intentionally kicked in the groin by Officer McInnes."
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled. Go ahead.
>
> A: This assault was intentional, objectively unreasonable, and a violation of Mr. Allen's civil rights. Mr. Allen screamed out in pain after he was kicked.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> A: "And there was absolutely no justification by Officer McInnes to cause that level of pain and suffering."

(Tr. 1141.) McInnes argues this testimony impermissibly usurped the province of the jury. However, both McInnes and his expert, Davis, conceded that McInnes intentionally kicked Allen. Davis stated: "I was unable to confirm that it was a kick

to the groin or the genitals. It was definitely a kick to the upper leg." (Tr. 1612.) He further stated that a kick to the groin might be appropriate in situations where a suspect is "actively assaulting" the officer but he admitted Allen was not actively assaulting anyone at the time he was kicked. (Tr.1614-1615.)

{¶ 82} McInnes admitted he was the individual seen approaching Allen in Johnson's body-camera video while he was being restrained by other officers and that he made contact with Allen's "upper thigh." (Tr. 1727.) He stated:

> A: My intent was to place my leg there to keep him from rolling or moving. It was not intended to be a strike.
>
> Q: Again, we're saying this is not a use of force?
>
> A: At the time, I did not believe it was.

(Tr. 1728.) Prevot's expert testimony was useful to explain that an intentional kick to the groin was not consistent with accepted police practices. To that extent, it was admissible under Evid.R. 702 and 704. Because McInnes and Davis admitted that the kick was intentional, Prevot's opinion that the kick was intentional was harmless even if the testimony had been admitted in error. Moreover, Davis agreed that an intentional kick to the groin would be unjustified in Allen's situation because he was not actively assaulting a police officer. (Tr. 1614-1615.)

{¶ 83} The only disputed issue was what part of Allen's body was struck by McInnes. To determine that issue, the jury heard the competing testimonies of Prevot, Davis, and McInnes. They also heard the testimony of Allen himself, who stated that he was kicked in his "private part" and that he screamed in pain.

(Tr. 726-727.) The jury was free to judge each witness's credibility based on their own viewing of the body-camera video. We, therefore, find no error in Prevot's testimony.

### 3. Robert DeSimone

{¶ 84} Similar to Roth, DeSimone offered lay testimony regarding the investigation into corruption within the East Cleveland Police Department. As part of the investigation, the FBI established a tip line for citizens to report criminal acts, and DeSimone stated that he checked the tip line daily because there were "so many complaints." (Tr. 1224.) McInnes argues this testimony did not offer any value "other than to impermissibly prejudice the jury against McInnes." (Appellant's brief p. 28.) McInnes did not object to this testimony and, therefore, forfeited all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 3 and ¶21.

{¶ 85} As previously stated with regard to Roth's testimony, the comments regarding criminal activities within the East Cleveland Police Department were not attributed to McInnes personally. Although both Roth and DeSimone described widespread corruption in East Cleveland, they also testified that Scott Gardner, Chief of the East Cleveland Police Department, cooperated with Roth's and DeSimone's investigation, reported incidents for investigation, and gave them access to the department's body-camera system. (Tr. 994-995, 1029, 1033, and 1222-1224.) This evidence would suggest that not all officers in the East Cleveland

Police Department were corrupt.[4] DeSimone also stated that they had to gather all the information they received from multiple sources before jumping to conclusions about an allegation because they needed to be fair to both sides. (Tr. 1223.)

{¶ 86} Police are generally allowed to explain the course of their investigations. *See, e.g., State v. Jackson*, 2007-Ohio-2925 (8th Dist.), ¶ 30. Moreover, the jury would have known of multiple alleged crimes within the East Cleveland Police Department without the testimony regarding the tip line and widespread corruption because they heard evidence of at least four separate incidents involving two different East Cleveland police officers. Therefore, it is doubtful the outcome of the trial would have been different if DeSimone had not mentioned the reports of alleged crimes to the tip line.

{¶ 87} McInnes argues he was prejudiced when DeSimone referred to the Brown incident as an "assault," implying that he was guilty of a crime. DeSimone explained that he became aware of the Brown incident "because that video of the assault was on social media [.]" (Tr. 1233.) McInnes's trial counsel did not object to this testimony and, therefore, forfeited all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 3 and 21.

{¶ 88} Although the word "assault" is a statutorily-defined crime, it is not a legal term of art. It is common word in the English language used to describe "a violent physical or verbal attack." Dictionary.com, "assault" available at

---

[4] Chief Gardner was under indictment at the time of trial. (Tr. 53, and 57-58.) However, that fact was not disclosed to the jury.

https://www.merriam-webster.com/dictionary/assault (accessed Jan 21, 2026) [https://perma.cc/CTC9-KVLQ]. Moreover, McInnes raised the affirmative defense that he was justified in the use of force, which implies an admission to the "assault." Therefore, McInnes cannot demonstrate he was prejudiced by DeSimone's use of the word "assault."

{¶ 89} McInnes argues DeSimone implied that McInnes was not truthful when he authored a report stating that Allen struck another officer's police cruiser by "brake-checking" the officer. (Tr. 1242.) McInnes contends DeSimone's testimony regarding the police report "undermined Mr. McInnes's truthfulness and character which were not at issue and was thus impermissible." (Appellant's brief p. 28.)

{¶ 90} However, DeSimone was not commenting on McInnes's credibility when he was discussing this aspect of his investigation. He was merely describing the narrative contained in a police report, the authenticity of which was stipulated to by the parties and admitted into evidence without objection as State's exhibit No. 320. (Tr. 1256.) He explained that when someone alleges that a suspect intentionally struck a police vehicle, the collision would be investigated as an "attempted felonious assault." (Tr. 1254.) And when police investigated the allegation, they found that the report was not consistent with the available video evidence of the incident. (Tr. 1258.) Allen also testified earlier that the police were "bumping" his car while they were pursuing him. (Tr. 723.) But DeSimone never accused McInnes of lying in the report, and McInnes was never charged with any

crime with respect to the report. The testimony was clear that if anyone was lying about the report, it would have been codefendant Anthony Holmes, who told McInnes that Allen "brake checked" him. DeSimone did not question that McInnes was merely reporting what he had been told by Holmes.

{¶ 91} McInnes nevertheless argues that DeSimone provided impermissible "ultimate issue" testimony regarding the Allen incident when he testified that McInnes could be seen in a body-camera video "squarely kicking" Allen in the groin. (Tr. 1273.) He also stated that Allen could be heard crying out in pain. (Tr. 1275.) Again, defense counsel did not object to this testimony and, therefore, forfeited all but plain error. *Rogers*, 2015-Ohio-2459, at ¶ 3 and ¶ 21.

{¶ 92} However, as previously discussed, both McInnes and his expert, Davis, admitted that McInnes kicked Allen. The only disputed issue was what part of Allen's body was struck by McInnes. In resolving this issue, the jury considered the competing testimonies of DeSimone, Prevot, Davis, and McInnes. They also heard the testimony of Allen himself, who stated that he was kicked in his "private part" and that he screamed in pain. (Tr. 726-727.) The jury was free to judge each witness's credibility based on their own viewing of the body-camera video. We, therefore, find no error in DeSimone's testimony.

{¶ 93} Finally, McInnes argues that DeSimone was improperly allowed to offer opinions regarding Brown's mental state. He referred to Brown as "being in a confused state" and that Brown could not verbalize or explain what he was doing there. (Tr. 1353-1354.) McInnes argues this testimony "was an attempt to garner

sympathy for Brown and amounted to hindsight testimony of what Mr. McInnes should have done under the circumstances, which is impermissible testimony." (Appellant's brief p.29.) However, because defense counsel did not object to this testimony, McInnes forfeited all but plain error. *Rogers* at ¶ 3 and ¶ 21.

{¶ 94} DeSimone's testimony that Brown was confused was duplicative of testimony previously provided by Prevot. (Tr. 1120, 1127.) The fact that Brown was confused is also corroborated by the video evidence of the Brown incident. Therefore, we cannot say that the outcome would have been different had DeSimone not stated that Brown was confused.

{¶ 95} The third assignment of error is overruled.

### D. Manifest Weight of the Evidence

{¶ 96} In the fourth assignment of error, McInnes argues his convictions are against the manifest weight of the evidence.

{¶ 97} In determining whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We will reverse a conviction as against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.), quoting *Thompkins* at 387.

### 1. Zievan Foster

{¶ 98} McInnes argues the jury lost its way in finding him guilty of assault, dereliction of duty, and violation of civil of civil rights in connection with his arrest of Foster on February 25, 2020.  He contends the jury was led astray by the State's "experts" who were erroneously allowed to testify that McInnes intentionally kicked Foster while he was "proned out" on the ground.  He further argues that had it not been for the State's experts' testimony, the jury would have believed McInnes's testimony that he slipped and that he struck Foster with his foot by accident.  However, we previously determined that the testimonies of Roth, Prevot, and DeSimone were properly admitted as lay and expert-opinion testimony under Evid.R. 701, 702, and 704.  Therefore, McInnes's argument that his convictions are against the weight of the evidence because they are based on inadmissible evidence is without merit.

{¶ 99} Furthermore, the jury viewed Johnson's body-camera video of the incident.  After viewing the body-camera footage, they were free to decide for themselves whether they believed McInnes's testimony that he struck Foster by accident or whether he used excessive force without justification.  Based upon our own review of the body-camera video and the trial testimony, we cannot say that the jury lost its way in finding McInnes guilty of the assault, interfering with civil rights, and dereliction of duty as a result of his actions vis-à-vis Foster.

## 2. Wayne Brown

{¶ 100} The jury found McInnes guilty of attempted felonious assault, assault, interfering with civil rights, and dereliction of duty in connection with his apprehension of Brown on February 14, 2022. With respect to these convictions, McInnes again argues that the State's "experts," Roth, Prevot, and DeSimone, provided inadmissible evidence that misled the jury. But because their testimony was properly admitted into evidence, this argument lacks merit.

{¶ 101} Moreover, as with the Foster incident, the video of the Brown incident was the best evidence. It unequivocally shows Brown on his knees with his hands behind his back when McInnes forcefully kicked him in the back, slamming his head down to the ground. Anyone who watches this video could conclude that the force used to kick Brown was excessive and unnecessary under the circumstances. Therefore, McInnes's argument that his convictions arising from the Brown incident are against the manifest weight is without merit.

## 3. Da'Shawn Allen

{¶ 102} McInnes argues the jury lost its way in convicting McInnes of assault, interfering with civil rights, and dereliction of duty in connection with his arrest of Allen on October 3, 2021. He contends his convictions are against the manifest of the evidence because his expert, Davis, disagreed that the video of the incident showed McInnes kicking Allen in the groin. Davis stated: "I don't see enough in the video to say that Officer McInnes intentionally struck the genitals or the groin area." (Tr. 1543.) He also asserts that "Allen himself did not even recall that he was kicked

in the genitals, which was undeniable evidence that no such kick occurred."
(Tr. 787.) Finally, McInnes asserts that "[h]ad the court prevented the State's
'experts' from giving their opinions about what the video portrayed, the jury could
have been allowed to reach their own conclusions about what they saw."
(Appellant's brief p. 35.)

{¶ 103} However, again, the body-camera video of the incident is the best
evidence. It shows an officer approach Allen, who was lying on the ground, and kick
him in the groin area. (*See* State's exhibit No. 301.) The identity of the officer who
kicked Allen was not immediately clear from the video. However, as Roth explained,
McInnes's face appears in the video shortly after the kick occurred. Moreover, as
mentioned previously, McInnes and Davis both conceded that McInnes was the
officer who kicked Allen. They merely disputed whether he kicked Allen in the groin
or on the upper thigh. (Tr. 1546 and 1727.) Therefore, McInnes's convictions are
not against the manifest weight of the evidence.

{¶ 104} The fourth assignment of error is overruled.

## E. Sufficiency of the Evidence[5]

{¶ 105} In the fifth assignment of error, McInnes argues the evidence was legally insufficient to support his convictions.

{¶ 106} The test for sufficiency requires a determination as to whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### 1. Qualified Immunity

{¶ 107} McInnes first argues the court should have granted his motion for acquittal under Crim.R. 29 because the evidence supported a finding that he acted reasonably and, therefore, he was entitled to qualified immunity. However, as previously stated, the defense of qualified immunity applies only in civil cases and is inapplicable to criminal prosecutions. *See Imbler*, 424 U.S. at 429; *Gillock*, 445 U.S. at 372; and *Graham*, 2024-Ohio-336, at ¶ 74 (8th Dist.). Therefore, the trial

---

[5] Within this assigned error, McInnes originally included an argument that because felonious assault under R.C. 2903.11(A)(2) is an offense which itself prohibits attempt, it cannot serve as a predicate offense under the attempt statute, R.C. 2923.02. McInnes withdrew this argument presumably because McInnes was not charged under R.C. 2903.11(A)(2); he was charged under R.C. 2903.11(A)(1), which does not require proof of an attempt to commit serious physical harm. *See State v. Brabson*, 2014-Ohio-5277, ¶ 10-11 (8th Dist.) (holding that because R.C. 2903.11(A)(1) does not require proof of an attempt to commit serious physical harm, a jury could find the defendant guilty of the lesser included offense of attempted felonious assault under R.C. 2903.11(A)(1) and 2923.02(A), the attempt statute).

court did not err in denying his motion for acquittal on grounds that McInnes was not entitled to qualified immunity.

## 2. Allen Incident

{¶ 108} McInnes further argues his convictions resulting from the Allen incident were not supported by the evidence. He asserts "there was insufficient evidence that Allen was even kicked in the groin because of the poor quality of the video" and that "the trial testimony of Allen should have been disregarded as he identified another officer as the person who allegedly kicked him." These arguments relate to the weight rather than the sufficiency of the evidence. Moreover, McInnes and his expert, Davis, admitted that McInnes kicked Allen.

{¶ 109} Therefore, the fifth assignment of error is overruled.

## F. Confrontation Clause

{¶ 110} In the sixth assignment of error, McInnes argues his right to confront his accusers guaranteed under the Confrontation Clause of the Sixth Amendment to the United States Constitution was violated when the trial court did not compel Brown to testify during the State's case-in-chief. He contends Brown's absence from trial allowed the State's witnesses to provide prejudicial and speculative testimony regarding the reasonableness of McInnes's conduct.

{¶ 111} The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36 (2004), the

United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial." *Id*. at 59.

{¶ 112} Although Brown was absent from trial, no statements from Brown, testimony or otherwise, were offered into evidence at trial. Therefore, the Confrontation Clause was not implicated. Furthermore, McInnes was able to cross-examine the State's witnesses that he claims provided prejudicial and speculative testimony. Therefore, there was no violation of the Confrontation Clause and the sixth assignment of error is overruled.

## G. *Garrity* Violation

{¶ 113} In the seventh assignment of error, McInnes argues his right to a fair trial was violated when the State used his "Form M" *Garrity* statement to impeach him. During the testimony regarding the Foster incident, Beese testified that he asked McInnes to complete a "Form M" use-of-force report after viewing Johnson's body-camera video "because it appeared he used force." (Tr. 698.) McInnes argues the use of the Form M during trial constituted a *Garrity* violation pursuant to *Garrity v. New Jersey*, 385 U.S. 493 (1967).

{¶ 114} In *Garrity*, the state attorney general investigated police officers for fixing traffic tickets. Although the officers were advised of their right to remain silent, they also were told that refusing to answer questions would lead to the termination of their employment. The officers chose to answer the questions, and the State used some of their answers against them in a subsequent criminal case. The United States Supreme Court held that the officers' confessions had been

compelled in violation of the Fifth and Fourteenth Amendments to the United States Constitution. *Id.* at 496-497. The Court observed "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.* at 497. Thus, the Court held that the officers' confessions were not voluntary but coerced and that the Fourteenth Amendment prohibited the use of the statements in subsequent criminal proceedings. *Id.* at 497-498, 500.

{¶ 115} Although Beese asked McInnes to complete a Form M, there is no evidence that he was threatened or otherwise compelled to do so. "[F]or a statement to be suppressed under *Garrity*, the employee claiming coercion must have believed that his or her statement was compelled on threat of job loss and this belief must have been objectively reasonable." *State v. Graham*, 2013-Ohio-2114, ¶ 24. *See also State v. Gideon*, 2020-Ohio-6961, ¶ 15.

{¶ 116} McInnes testified regarding the Form M, but he never mentioned being coerced or that his job was threatened if he were to refuse. (Tr. 1656.) Courts have held that routine reports completed in the ordinary course of duty are not *Garrity*-compelled. *See, e.g., United States v. Cook*, 526 F.Supp.2d 1, 8-9 (D.D.C. 2007); *United States v. Rioz Ruiz*, 579 F.2d 670, 675-676 (1st Cir. 1978). There is, therefore, no evidence of a *Garrity* violation.

{¶ 117} The seventh assignment of error is overruled.

## H. Grand-Jury Transcripts

{¶ 118} In the eighth assignment of error, McInnes argues the trial court erred in denying his request for grand-jury transcripts. He contends the transcripts were necessary to ensure that the grand jury applied the proper probable cause standard and to reveal possible *Garrity* violations.

{¶ 119} We review a trial court's decision on whether to disclose grand-jury transcripts for an abuse of discretion. *State v. Coley*, 93 Ohio St.3d 253, 261 (2001), citing *State v. Brown*, 38 Ohio St.3d 305, 308 (1988).

{¶ 120} Grand-jury proceedings are secret. Crim.R. 6(E). There is no right to inspect grand-jury transcripts unless there is a showing of a particularized need for disclosure that outweighs the need for secrecy. *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph two of the syllabus. Speculation is not sufficient. *State v. Rackley*, 2023-Ohio-4656, ¶ 17 (8th Dist.)

{¶ 121} A particularized need exists when consideration of the surrounding circumstances shows "it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Greer* at paragraph three of the syllabus. The determination of whether a particularized need exists is a question of fact. *Id.*

{¶ 122} "[A]n indictment valid on its face" is not subject to challenge based "on the reliability or competence of the evidence presented to the grand jury." *Bank of Nova Scotia v. United States*, 487 US 250, 261 (1988), citing *United State v. Calandra*, 414 U.S. 338, 344-345 (1974). Similarly, a facially valid indictment

returned by a properly constituted grand jury "conclusively determines the existence of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975).

{¶ 123} McInnes argues he needed the grand-jury transcripts for two reasons: (1) to determine whether the grand jury was properly instructed as to the elements of the offenses charged or whether they concluded that his actions were objectively unreasonable under *Graham*, 490 U.S. at 386, and (2) to determine whether the State's witnesses impermissibly used McInnes's *Garrity* statements. However, as previously stated, because there was no evidence of coercion when McInnes completed the Form M, there were no *Garrity* statements and, therefore, no *Garrity* violation. McInnes's concern as to whether the jury was properly instructed as to the elements of the offenses or whether they considered his actions objectively unreasonable under *Graham* is mere speculation, not a particularized need. Moreover, even if the grand jury had been erroneously instructed, the error would be harmless since a petit jury subsequently found him guilty beyond a reasonable doubt under the correct standard. *United States v. Mechanik*, 475 U.S. 66, 71-73 (1986).

{¶ 124} Therefore, the eighth assignment of error is overruled.

### I. Sentencing

{¶ 125} In the ninth assignment of error, McInnes argues his sentence is not supported by the record and is contrary to law.

{¶ 126} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 22-23. Under

R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support certain of the sentencing court's findings or (2) the sentence is "otherwise contrary to law."

{¶ 127} "A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Evans*, 2021-Ohio-3679, ¶ 12 (8th Dist.).

{¶ 128} A sentence is not clearly and convincingly contrary to law if "the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 2013-Ohio-2525, ¶ 10 (8th Dist.).

{¶ 129} R.C. 2929.11 addresses the overriding purposes of felony sentencing, and R.C. 2929.12 enumerates certain factors the court must consider when imposing a sentence. *State v. Jones*, 2020-Ohio-6729, ¶ 18-19. Under R.C. 2929.11(A), the overriding purposes of felony sentencing are to (1) "protect the public from future crime by the offender and others," (2) "punish the offender," and (3) "promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources."

{¶ 130} The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). The sentencing court has discretion to determine the best way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. *State v. Bridges*, 2019-Ohio-1769, ¶ 10 (8th Dist.).

{¶ 131} R.C. 2929.12 sets forth a nonexhaustive list of factors the trial court must consider in assessing the seriousness of the offender's conduct and the likelihood of recidivism, including whether the physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim and whether the offender held a public office or position of trust in the community and the offense related to that office or position. R.C. 2929.12(B)(1) and (4).

{¶ 132} R.C. 2929.12(C) sets forth factors indicating when the offender's conduct is less serious than conduct normally constituting the offense, including whether, in committing the offense, the offender did not cause or expect to cause physical harm to any person or property and whether there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶ 133} R.C. 2929.11 and 2929.12 are not factfinding statutes. Therefore, although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12,

the court is not required to make findings or give reasons for imposing more than the minimum sentence. *State v. Pavlina*, 2013-Ohio-3620, ¶ 15 (8th Dist.), citing *State v. Foster*, 2006-Ohio-856. A trial court's general statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *Id.*, citing *State v. Wright*, 2011-Ohio-733, ¶ 4 (8th Dist.). Consideration of the factors is presumed unless the defendant affirmatively shows otherwise. *State v. Wright*, 2018-Ohio-965, ¶ 16 (8th Dist.), citing *State v. Keith*, 2016-Ohio-5234, ¶ 11 (8th Dist.).

{¶ 134} McInnes argues the trial court erred in imposing a 30-month prison term on his attempted-felonious-assault conviction, which arose out of his apprehension of Brown. He also argues "the court erroneously imposed a concurrent 180-day sentence on each and every misdemeanor conviction." (Appellant's brief p. 50.) He contends the alleged conduct in the Brown, Allen, and Foster incidents did not support the imposition of any jail sentence. Finally, he asserts that the trial court "failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and 2929.12." (Appellant's brief p. 51.)

{¶ 135} Despite McInnes's argument to the contrary, the trial court expressly stated that it considered the purposes and principles of felony sentencing when it fashioned McInnes's sentence. (Tr. 1966-1968.) After considering the relevant sentencing statutes, the court stated that it "finds that a prison sentence is consistent with the principles and purposes of felony sentencing." (Tr. 1968.)

{¶ 136} McInnes's attempted felonious-assault conviction was a third-degree felony in violation of R.C. 2923.02 and 2903.11(A)(1). R.C. 2929.14(A)(3)(b) provides that the sentencing range for this kind of third-degree felony "shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." Therefore, the 30-month prison term imposed on McInnes's third-degree felony is within the statutory range for conviction. It is, therefore, not contrary to law. The 180-day sentences imposed on each of the first-degree misdemeanor convictions are also authorized by law and are not contrary to law. R.C. 2929.24(A)(1).

{¶ 137} The sentences imposed on McInnes's convictions are supported by the record. McInnes contends that Brown was not injured by the attempted felonious assault. However, Brown suffered from a mental illness and his civil rights were violated regardless of whether he suffered a serious physical injury. It is also relevant that McInnes committed the offense in his position as a police officer, a position of trust in the community. The record also showed a pattern of aggressiveness and abuse of his position. The court did not impose consecutive sentences, nor did it impose the maximum sentence authorized by law. The sentences seem reasonably tailored to punish and rehabilitate McInnes using "the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." We, therefore, find no error in the sentences imposed.

{¶ 138} The ninth assignment of error is overruled.

{¶ 139} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
MICHAEL JOHN RYAN, J., CONCUR